The PROCTER & GAMBLE
COMPANY, Plaintiff,

v.

KIMBERLY–CLARK
CORPORATION, Defendant,

v.

RAYCHEM CORPORATION,
Defendant–On–The
Counterclaim.

Civ. A. No. CA 3–85–1539–G.

United States District Court,
N.D. Texas,
Dallas Division.

April 13, 1987.

Allen H. Gerstein, Marshall O'Tolle Gerstein Murray & Bicknell, Chicago, Ill., Michael A. O'Neil, Gardere & Wynne, Dallas, Tex., for plaintiff.

V. Bryan Medlock, Jr., Richards, Harris, Medlock & Andrews, Dallas, Tex., William O. Fifield, Sidley & Austin, Chicago, Ill., for defendant.

Robert B. Cousins, Jr., Bird & Reneker, Dallas, Tex., for Raychem Corp.

## MEMORANDUM ORDER

FISH, District Judge.

This case is before the court on the motion of Raychem Corporation ("Raychem") to dismiss defendant's counterclaims against it in this action. After reviewing the motion, response, memoranda, affidavits, and exhibits, the court has concluded that Raychem's motion should be granted, for the reasons stated below.

### I. NATURE OF THE CASE

Plaintiff Procter & Gamble Company ("P & G") seeks injunctive relief and damages against defendant Kimberly–Clark Corporation ("K–C") on the ground that K–C has infringed Patent No. 3,639,917, entitled "Heat Recoverable Article," issued to Victor E. Althouse ("the Althouse patent").

The patent covers a material which shrinks when heated; this material is used, so far as pertinent here, to gather the waistbands of disposable diapers.

Althouse assigned his patent to Raychem. In 1983, Raychem granted P & G an exclusive license to the Althouse patent. In August 1985, Raychem assigned all its rights under the patent to P & G.

K–C's counterclaim against Raychem asserts that Raychem should be a party to this case because it continues to have a financial and legal interest in the patent. In this motion, Raychem seeks dismissal of K–C's counterclaim on the ground that it no longer holds any interest in the Althouse patent.

## II.  ANALYSIS

■ The papers on the motion to dismiss have discussed, in exhaustive detail, whether Raychem was the owner/licensor of the Althouse patent on August 7, 1985, the date the complaint was filed. The court need not resolve that dispute, however, because even assuming that Raychem was the owner/licensor of the Althouse patent on the date the original complaint was filed, it assigned its interest in the patent to P & G within a few weeks of the commencement of this action. The question whether Raychem was the owner of the Althouse patent and thus subject to joinder on the date the action commenced is now moot in light of Raychem's complete assignment of all of its rights under the Althouse patent.

### A.  *Raychem is not an Indispensable Party to this Action*

■ A complete assignment of an owner's rights under a patent divests the assignor of ownership in the patent. The assignee may sue in its own right, without joining the assignor as an independent party. *Gilson v. Republic of Ireland*, 606 F.Supp. 38, 41 (D.D.C.1984), *aff'd*, 787 F.2d 655 (D.C.Cir.1986).

The rule for determining whether an agreement between two parties is an assignment or a license was announced by the Supreme Court in the leading case of

*Waterman v. MacKenzie*, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891):

> Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions.

*Id.* at 256, 11 S.Ct. at 335. *See also E.W. Bliss Co. v. United States*, 253 U.S. 187, 192, 40 S.Ct. 455, 457, 64 L.Ed. 852 (1920); *Von Brimer v. Whirlpool Corporation*, 362 F.Supp. 1182, 1192 (N.D.Calif.1973); *Universal Winding Company v. Gibbs Machine Co.*, 179 F.Supp. 394, 398 (M.D.N.C.1959).

Two documents appear relevant to the question of whether Raychem completely assigned its interest in the Althouse patent to P & G. The first document, entitled "Addendum to License Agreement," recited an effective date of August 1, 1985 but was executed by Raychem on August 14, 1985. Kimberly–Clark's Memorandum in Opposition to Raychem Corporation's Motion to Dismiss, Exhibit B, at 2.

> The addendum provides in pertinent part: Raychem hereby assigns its entire right, title and interest in and to Said Patents to P & G to the full end of the terms for which Said Patents have been or may in the future be granted or reissued, together with all claims for damages by reason of past infringements of Said Patents, with the right to sue for and collect the same.

*Id.* ¶ 2.

The addendum also provides that it supersedes the license agreement to the extent that the addendum renders the license agreement obsolete or inapplicable. *Id.* ¶¶ 4, 5. The addendum further provides that P & G will continue to pay Raychem according to the terms of the license agreement but that these payments represent consideration for the assignment, not royalties under the license agreement. *Id.* ¶ 3.

The second relevant document is titled simply "Assignment." Although bearing an effective date of August 1, 1985, it was executed on August 30, 1985. Kimberly–Clark's Supplemental Memorandum in Op-

position to Raychem Corporation's Motion to Dismiss, Exhibit M (Raychem's Supplemental Response to Interrogatory No. 4 of Kimberly–Clark's First Set of Interrogatories at 2).

The assignment provides in relevant part:

> Raychem Corporation has agreed to ... sell, assign and transfer unto the Said The Procter & Gamble Company ... and assigns the entire right, title and interest in and to Said Invention, Said U.S. Patent ... to be held and enjoyed ... as fully and entirely as the same would have been held and enjoyed by Raychem Corporation had this sale and assignment not been made together with all claims for damages by reason of past infringement ... with the right to sue for and collect the same for its own use and enjoyment....

*Id.*, Exhibit E, at 1–2.

■ The plain language of both the addendum to the license agreement and the assignment clearly indicates that Raychem has divested itself of all ownership rights in the Althouse patent. Although the title of the first document, "Addendum to the License Agreement," suggests that the document merely amends the previous license agreement between Raychem and P & G, the court—in obedience to the *Waterman* rule—must look beyond the title of the document to its legal effect. *Waterman v. MacKenzie*, above, 138 U.S. at 256, 11 S.Ct. at 335. The legal effect of the addendum is to assign Raychem's "entire right, title and interest" in the Althouse patent, including "all claims for damages by reason of past infringements...." Kimberly–Clark's Memorandum in Opposition to Raychem Corporation's Motion to Dismiss, Exhibit B. In addition, the assignment executed on August 30, 1985 contains even more detailed language (quoted on page 4 above) as to the completeness of Raychem's assignment.

The language in the assignment agreement is similar to that construed in *Irving*

*Air Chute Co. v. Switlik Parachute & Equipment Co.*, 26 F.Supp. 329, 330 (D.N.J.1939). There the court held that the assignment left the assignor "bereft of any interest in the controversy between the plaintiffs and original defendants." *Id.* Moreover, the addendum and assignment at issue here are at least as comprehensive as agreements in other cases which have been held to be complete assignments. *See Rude v. Westcott*, 130 U.S. 152, 162, 9 S.Ct. 463, 467, 32 L.Ed. 888 (1889); *Von Brimer v. Whirlpool Corp.*, above, 362 F.Supp. at 1191.[1]

The monetary consideration Raychem received for the assignment is identical to the compensation it received as royalties under the license agreement with P & G. Kimberly–Clark's Memorandum in Opposition, Exhibit B, at 1–2. This consideration consists of 1½% of the net cost of the heat shrinkable material manufactured or sold in any country in which the patent is valid or $100,000.00, whichever is greater. Kimberly–Clark's Supplemental Memorandum in Opposition, Exhibit O, pp. 2–3. The identity of this monetary consideration does not, however, make Raychem's assignment incomplete or ineffective. Courts have repeatedly held that an assignor's reservation of certain financial interests or other rights did not make the assignment incomplete or ineffective. In *Waterman*, for example, the assignment at issue was subject to a mortgage. By the terms of this mortgage, the assignment would become null and void if the assignor or her husband paid the underlying debt at maturity. *Waterman v. MacKenzie*, above, 138 U.S. at 257–258, 11 S.Ct. at 336. The Supreme Court held that the assignee/mortgagee was the "present owner of the whole title in the patent" and thus the only person entitled to bring an infringement action. *Id.* at 261, 11 S.Ct. at 337.

Similarly, in *Rude v. Westcott*, above, a patent owner assigned his interest in the patent to two other men in exchange for a one-fourth share of the profits from the

---

1. The agreements in those cases recited that the assignors conveyed their entire right, title and interest but, unlike the assignment here, did not contain specific language to the effect that the assignments included all claims for damages for past infringements.

patent in question. The Supreme Court noted that the reservation of profits did not "in any respect, modify or limit the absolute transfer of title" and rejected the defendants' argument that the plaintiffs had failed to establish their title to the patent at issue. 130 U.S. at 163, 9 S.Ct. at 467.

Likewise, in *Leesona Corporation v. Duplan Corporation*, 319 F.Supp. 223 (D.R.I. 1970), the assignee agreed to make periodic royalty payments as part of the purchase price. In addition, the assignee agreed to obtain the assignor's consent prior to: its assignment of the patent; the institution of a patent infringement action; and any reduction in fees paid by licensees of the assignee. The court held that the agreement was an assignment, and that the assignor's other rights described above were merely intended to safeguard the assignor's right to payments of the purchase price. *Id.* at 224. Thus, the court denied the defendant's motion to dismiss for failure to join an indispensable party.

The above-described cases support the conclusion that Raychem's continued receipt of payments does not affect the complete assignment of its rights under the Althouse patent. Having completely divested itself of its rights under the Althouse patent, Raychem cannot be forced to remain in this suit as an indispensable party under Rule 19, Fed.R.Civ.P.

■ K–C asserts that the court "should consider the facts *as they existed at the time of filing suit* in determining whether Raychem was a proper party." Kimberly–Clark's Supplemental Memorandum in Opposition to Raychem Corporation's Motion to Dismiss at 13 (emphasis in original). As authority for this proposition, K–C cites *Switzer Brothers, Inc. v. Byrne*, 242 F.2d 909, 913 (6th Cir.1957). In *Switzer*, the two Switzer brothers and their wives executed a non-exclusive license agreement in favor of Switzer Brothers, Inc. in 1946. In 1953, Switzer Brothers, Inc. brought a patent infringement suit in which the two brothers joined. The Switzer brothers and

their wives later assigned their entire right in the patents to Switzer Brothers, Inc. The accused infringer moved to dismiss the action for failure to join indispensable parties (the wives) as plaintiffs. The court held that jurisdiction depended upon the facts as they existed at the inception of suit, i.e., that the subsequent assignment was of no legal effect. Because the wives were indispensable and had not been joined at the commencement of the action, defendant's motion to dismiss was granted.

*Switzer* may be inapplicable here because the original plaintiff in that case was indisputably only a licensee, not an assignee or owner. 242 F.2d at 912–13. See also *Von Brimer v. Whirlpool Corporation*, above, 362 F.Supp. at 1193. The Sixth Circuit observed in a later case that "[r]ules applicable to a licensee are not controlling as to a co-owner." *Willingham v. Star Cutter Company*, 555 F.2d 1340, 1344 (6th Cir.1977). Arguably, the narrow proposition for which *Switzer* stands is that an owner or assignee of the patent, not a licensee, must commence any suit for infringement.[2] If *Switzer* stands for any broader proposition, its precedential value must be doubted in light of more recent case authority holding that a patent's co-owner may not be an indispensable party to an infringement action if the shaping of relief can avoid any possible prejudice. *Windsurfing International, Inc. v. Ostermann*, 100 F.R.D. 82, 83–84 (S.D.N.Y. 1983).

To the extent that *Switzer* is applicable to the facts of this case, however, the court declines to follow it, for there is persuasive case authority supporting the proposition that even if Raychem owned the Althouse patent on the day suit was filed, dismissal was proper once the patent had been assigned. *Irving Air Chute Co. v. Switlik Parachute & Equipment Co.*, above, 26 F.Supp. at 329–30. In *Irving Air Chute*, the patent owner transferred its interest *pendente lite*. The court granted the plaintiff assignee's motion to dismiss the

2. Throughout this case, P & G has always maintained that it is the *owner* of the Althouse patent. The attempted assignment in *Switzer* occurred two and a half years after commencement of suit, unlike the situation here, where it occurred almost contemporaneously with filing.

assignor pursuant to Fed.R.Civ.P. 25(c). The court noted that the assignor "became bereft of any interest in the controversy" so that dismissal was proper, even though the assignor was the owner of the patent at the commencement of the suit. *Id.* at 330. *See also Robert L. Ferman & Company v. General Magnaplate Corporation*, 33 F.R. D. 326, 329 (D.N.J.1963) (motion under Fed. R.Civ.P. 19 to join co-underwriter of defendant in action for breach of underwriting agreement stricken and denied as moot where defendant acquired all shares of co-underwriter).

The court believes that *Irving Air Chute* represents the better reasoned view. A party which assigns all of its rights and interests under a patent should not be compelled to litigate an infringement action merely because it was the patent owner on the day suit was filed and for a few days thereafter. A party which divests itself of all of its interest in a patent does not have a sufficient stake in the outcome of the controversy to require that it remain a party. Any other result would exalt form over substance.

Granting Raychem's motion to dismiss is also consistent with the goals of Fed.R.Civ. P. 19. Because Raychem assigned all of its interests under the Althouse patent to P & G, complete relief can be accorded among the remaining parties (K–C and P & G) if Raychem is dismissed as a party. In addition, disposition of the action in Raychem's absence will not impair its ability to protect an interest relating to the subject of the action or leave either K–C or P & G subject to a substantial risk of inconsistent obligations. *See* Rule 19(a), Fed.R.Civ.P.

B. *Raychem is Neither a Necessary Nor a Proper Party to This Action*

■ Finally, K–C argues that even if Raychem is not an indispensable party, it is a necessary or proper party to this action. A necessary party (or, more accurately speaking, a conditionally necessary party) falls into one of the categories described in Rule 19(a)(1) or (2) and whose joinder is feasible. 3A J. Moore & J. Lucas, Federal Practice, ¶ 19.02 (2d ed. 1986). While Raychem's joinder is feasible, the court has concluded that it does not fall into one of the categories described in Rule 19(a)(1) or

(2) as discussed above. K–C cites Professor Chisum as authority for the proposition that an assignor who retains a "continuing interest" in the patent such as a continuing royalty payment is sufficient to render the assignor a necessary party. 5 Chisum, *Patents*, § 21.03[3] (1985 ed.). The court disagrees with Professor Chisum's position because it is inconsistent with the many decisions, discussed above, that a party may make a complete assignment of its interest in a patent yet retain some financial interest such as that possessed by Raychem here.

A proper party may be joined "where there is a question of law or fact in the action common to the right or duty in which he is interested and the rights or liabilities involved [arose] out of the same transaction …" 3A J. Moore & J. Lucas, *Moore's Federal Practice*, ¶ 19.02 (2d ed. 1986). The assignment establishes that Raychem is no longer an interested party. In addition, there are no common questions of law or fact which would justify retaining Raychem as a party in the case.

### III.  CONCLUSION

For the foregoing reasons, Raychem's motion to dismiss is hereby GRANTED.

SO ORDERED.