**VALMET PAPER MACHINERY, INC. and Valmet–Charlotte, Inc., Plaintiffs,**

v.

**BELOIT CORPORATION, Defendant.**

No. 93–C–587–C.

United States District Court, W.D. Wisconsin.

Oct. 7, 1994.

Brian E. Butler, Stafford, Rosenbaum, Rieser & Hansen, Madison, WI, for Valmet Paper Machinery, Inc., Valmet–Charlotte, Inc.

George P. McAndrews, McAndrews, Held & Malloy, Ltd., Chicago, IL, for Beloit Corp.

## ORDER

CRABB, Chief Judge.

This is an action for patent infringement, presently before the court on defendant's motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction. The basis of defendant's motion is a claim that plaintiffs lacked standing to institute or maintain this action. For the reasons expressed below, defendant's motion will be denied.[1]

## FACTS

The facts relevant to defendant's motion are not in dispute. United States Patent No. 3,868,780 (" '780 patent") issued on March 4, 1975 to Valmet Oy, a Finnish corporation that had been assigned the rights to the patent by its inventors. The claims in the '780 patent relate to the technology used in the drying section of a paper making machine. Valmet Oy held the rights to the '780 patent until May 3, 1984, when it assigned the patent to Valmet–Dominion, Inc., its wholly-owned Canadian subsidiary corporation.

In October 1991, Valmet–Dominion, Inc., which had changed its name to Valmet–Montréal, Inc., attempted to orally assign to Valmet Paper Machinery, Inc., one of the plaintiffs in this action, all of its rights in the '780 patent, including the right to sue for past infringement. Approximately five months later, on March 4, 1992, the patent expired.

The present infringement action was commenced on January 26, 1993 by Valmet Paper Machinery, Inc., and Valmet Charlotte, Inc., a related corporation. Thirteen days later, on February 8, 1993, Valmet–Montréal, Inc., and Valmet Paper Machinery, Inc., reduced their prior oral agreement to writing. By the terms of that written assignment, which was merely "confirmatory of [the] oral assignment made in October of 1991," the parties agreed to sell, assign, and transfer all rights, title and interest in and to the '780 patent, together with all claims and causes of action for past infringement.

## OPINION

It is a well established principle of patent law that patent rights can be assigned, 35 U.S.C. § 261, and that a valid assignment vests independent standing in the assignee to enforce the rights under the patent. *Waterman v. Mackenzie,* 138 U.S. 252, 255, 11 S.Ct. 334, 335, 34 L.Ed. 923 (1891); *Gilson v. Republic of Ireland,* 606 F.Supp. 38, 41 (D.D.C.1984), *aff'd,* 787 F.2d 655 (D.C.Cir.1986). Concerning the most important of these rights, the right to sue for past infringement, *Calgon Corp. v. Nalco Chemical Co.,* 726 F.Supp. 983, 986 (D.Del.1989) (citing *Crown Die & Tool Co. v. Nye Tool & Machine Works,* 261 U.S. 24, 35–39, 43 S.Ct. 254, 256–58, 67 L.Ed. 516 (1923)), this means that a true assignee can sue for infringements that occurred while the patent was held by the assignor without having the assignor join the lawsuit as an independent party.

Defendant argues that plaintiffs lack standing to institute or maintain the present suit and that the only party with such standing is Valmet–Montréal, the owner of the patent at the time of the alleged infringement. To support this position, defendant first contends that the October 1991 agreement did not confer standing upon plaintiffs because oral assignments are invalid. Next, defendant contends that the February 8, 1993 written agreement did not confer stand-

---

1. On September 30, 1994, claiming that defendant had "resorted to briefing by ambush," plaintiffs filed a motion to strike an argument raised by defendant for the first time in its reply brief. In view of the conclusions I reach here, it is unnecessary to rule on plaintiffs' motion.

ing upon plaintiffs because the right to sue for past infringements cannot be assigned after a patent has expired. Finally, defendant contends that even if the written assignment did confer standing upon plaintiffs, since it was executed thirteen days after this suit was filed, it came too late. I will consider each of defendant's arguments in turn.

## A. *Validity of the Oral Agreement*

■ The first question raised by defendant's motion is whether the October 1991 oral agreement was sufficient to confer upon plaintiffs standing to sue for past infringements of the '780 patent. Defendant correctly contends that it did not because the agreement was oral. Under 35 U.S.C. § 261, only written patent assignments are valid. Section 261 unambiguously establishes the writing requirement: "Applications for patents, patents, and any interest therein shall ·be assignable in law by an instrument in writing." *See also United States v. Solomon,* 825 F.2d 1292, 1296 (9th Cir.1987), *cert. denied,* 484 U.S. 1046, 108 S.Ct. 782, 98 L.Ed.2d 868 (1988) ("In the context of an assignment of a patent, [the parties] can agree verbally until the cows come home, and that patent isn't assigned until there's a writing."). Consequently, the earliest plaintiffs could have acquired the right to sue under the '780 patent was on February 8, 1993, the date Valmet–Montréal and Valmet Paper Machinery reduced their prior oral agreement to writing.

## B. *Validity of the Written Agreement*

■ Defendant also challenges the effect of the written assignment, claiming that it did not transfer the right to sue to plaintiffs because the '780 patent expired on March 4, 1992, and the right to sue for past infringement cannot be assigned after a patent has expired. According to defendant, only assignees who have acquired all the rights under a patent, including the exclusive right to make, use and vend the invention, have standing to sue, and in this case, because the '780 patent rights passed into the public domain when the patent expired, plaintiffs acquired only a "naked right to claim damages," which, under *Crown Die & Tool Co. v. Nye Tool & Machine Works,* 261 U.S. 24, 43·

S.Ct. 254, 67 L.Ed. 516 (1923), does not confer standing.

Referring first only to its language, the written agreement satisfies two essential prerequisites of an assignment. Even though it purports merely to confirm the ineffective prior oral agreement, it (1) unmistakably demonstrates the parties' intention to transfer to plaintiffs all rights to the '780 patent; and (2) expressly includes the right to sue for past infringement. *See McClaskey v. Harbison–Walker Refractories Co.,* 138 F.2d 493, 499 (3d Cir.1943) (assignment·language must indicate the parties' unmistakable intention to transfer a legal interest in the patent, though no particular form of words are required) and *Hockerson–Halberstadt, Inc. v. Nike, Inc.,* 779 F.Supp. 49, 52 (E.D.La.1991) (rights of action for past infringement are conveyed only expressly and not by a mere assignment of the patent) (citations omitted).

■ Second, the defendant's basic premise that the right to sue for past infringement cannot be assigned after a patent has expired contradicts over a century of established patent law. After thoroughly examining the case law and the writings of patent authorities, I conclude that the right to sue for past infringement may indeed be assigned after a patent has expired and that the assignee of such a right can maintain an infringement suit in its own name. This was the court's conclusion in *Tompkins v. St. Regis Paper Co.,* 226 F. 744 (D.C.N.Y.1915), *aff'd,* 236 F. 221 (2d Cir.1916), despite the defendant's identical argument that once a patent expires, the right to sue for past infringement cannot be assigned because "there [is] nothing to assign, except a mere cause of action at law to recover the damages." *Id.* at 747; *see also Ross v. Ft. Wayne,* 63 F. 466 (7th Cir.1894); *May v. Saginaw County,* 32 F. 629 (C.C.Mich.1887). Patent authorities concur. *See, e.g., Lipscomb's Walker on Patents* § 19:19 (3d ed.·1987) ("An assignment of a patent after it expires is a nullity with respect to the transfer of a grant but will operate to transfer to the assignee the right to sue for past infringements.").

Defendant relies on *Crown Die & Tool Co. v. Nye Tool & Machine Works,* 261 U.S. 24, 43 S.Ct. 254, 67 L.Ed. 516 as a case that

upsets this principle, but nothing in *Crown Die* restricts the right of an assignee of an expired patent to maintain an infringement action in its own name. In *Crown Die,* the patent holder transferred to the plaintiff, *during the life of the patent,* only the right to sue for past and future infringements, and not the right to make, use or vend the patented article. In other words, the patent owner "divide[d] up the monopoly of patent property" by assigning the right to sue for infringements while retaining substantial rights under the patent. *Id.* at 38–39, 43 S.Ct. at 257–58. The Supreme Court concluded that this arrangement was not an assignment and did not confer upon the plaintiff standing to sue for past infringements in its own name. *Id.*

To support the position that the right to sue for past infringements cannot be transferred after the patent has expired, defendant analogizes the assignment of an expired patent to the situation in *Crown Die.* Essentially, defendant contends that with the '780 patent having expired, plaintiffs in the present case are like the plaintiff in *Crown Die:* they received no more than the right to sue for past infringements. However logically appealing that argument may be, it is not supported by the policy considerations that motivated the decision in *Crown Die,* namely, a desire to prevent a patent owner from stirring up litigation by third parties by dividing up the monopoly of patent property and assigning rights to different individuals. *Id.*

Because in *Crown Die* the patent assignment occurred during the life of the patent, the plaintiffs in the present case and the plaintiff in *Crown Die* do not stand in the same position. In *Crown Die* the patent owner retained substantial rights in the patent. In the present case, by contrast, the patent owner retained no interest in the '780 patent. The significance of this distinction has not been lost on the patent authorities.

> While an assignment of a patent after its expiration may be looked on as merely an assignment of the right to sue for infringements committed prior to the expiration of the patent, such an assignment is free of the objections raised by the Supreme Court in the *Crown* case. In that case, the court emphasized the fact that the assignee had no right to use the invention. . . . Where an assignment is made after expiration of the patent, the assignee has such common-law right. True, all the rest of the world has the same right, but at the same time the assignee has all of the rights of his assignor.

*Risdale Ellis, Patent Assignments* § 61 (3d ed. 1955).

Hence, only in *Crown Die* and not in the present case was the monopoly of patent property divided up in such a way that "it would give the patentee an opportunity . . . to stir up litigation by third persons that is certainly contrary to the purpose and spirit of the statutory provisions for the assigning of patents." *Id.* at 39, 43 S.Ct. at 257.

For these reasons, I conclude that the February 8, 1993 written confirmation between Valmet–Montréal and Valmet Paper Machinery, under which plaintiffs received all rights in the patent, including the right to sue for past infringement, transferred to plaintiffs the right to maintain an action for past infringement in their own names.

### C. *Timing*

■ The conclusion on standing does not dispose of the current dispute. The conclusion that plaintiff Valmet Paper Machinery was validly assigned the right to sue for past infringement leaves the remaining issue whether the grant came too late for plaintiffs to maintain the present action. Defendant asserts that even if the February 8, 1993 assignment was valid, plaintiffs lacked standing on January 26, 1993, the day they instituted this lawsuit, and that this defect was irremediable.

Courts have disagreed on the ability of a post-filing assignment to confer standing upon a party that lacked standing on the day it filed its patent infringement action. For instance, in *Afros S.p.A. v. Krauss–Maffei Corp.,* 671 F.Supp. 1402, 1443–46 (D.Del. 1987), *aff'd without opinion,* 848 F.2d 1244 (Fed.Cir.1988), the primary case upon which defendant relies, the court held that an assignment effectuated at least seven months after suit was instituted did not confer stand-

ing upon the assignee to maintain an infringement action. The defendant in *Afros* was a subsidiary of a West German corporation that counterclaimed for infringement of a patent it had been assigned. As of the date of the counterclaim, however, the defendant lacked standing to sue for infringement because under West German law the assignment was not currently valid. *Id.* at 1445. Even though under West German law the assignment subsequently became valid and related back to the date of the transaction, the court held that the assignee's lack of standing on the day it instituted suit could not be cured. *Id.* at 1445–46. According to the court, "[p]ermitting a presently invalid assignment to serve as a basis of [a patent infringement claim] on the ground that it later 'became' valid, which ratification transposes itself back in time, will impermissibly expand the class of persons able to sue for infringement." *Id.* at 1446.

A contrary conclusion was reached, however, in two other cases. In *Procter & Gamble Co. v. Kimberly–Clark Corp.*, 684 F.Supp. 1403 (N.D.Tex.1987), the court held that an assignee who had not been assigned complete interest in the patent until a few weeks after it commenced an infringement suit nevertheless had standing to maintain the action. The defendant in *Procter & Gamble* had counterclaimed against the assignor, contending that it was a necessary party because the plaintiff lacked standing to sue on the day it filed suit. The court disagreed and granted the assignor's motion to dismiss, reasoning that:

> A party which assigns all of its rights and interests under a patent should not be compelled to litigate an infringement action merely because it was the patent owner on the day suit was filed and for a few days thereafter. A party which divests itself of all of its interest in a patent does not have a sufficient stake in the outcome of the controversy to require that it remain a party. Any other result would exalt form over substance.

*Id.* at 1407. Thus, the assignee had standing to maintain the infringement suit solely in its own name, despite its lack of standing on the day it instituted the action.

In *Ciba–Geigy Corp. v. Alza Corp.*, 804 F.Supp. 614 (D.N.J.1992), a more recent case, the plaintiff did not acquire standing to sue past infringers until six and one-half months after it filed suit. *Id.* at 635. Defendant moved to dismiss the complaint on the ground that plaintiff lacked standing to institute the action. The court denied the motion. Relying on *Procter & Gamble* and declining to follow *Afros,* the court applied the post-filing assignment retroactively to the day that plaintiff instituted the lawsuit, thereby conferring standing upon plaintiff. This resolution, the court reasoned, was wiser than dismissing the lawsuit or requiring the assignor to join as a necessary party when it no longer had any real interest in the patent, for either of those alternatives would "only exalt form over substance." *Id.* at 637. The court was additionally persuaded by the practical realities of the situation. Specifically, because the post-filing assignment transferred to plaintiff all rights to the patent, "continuing the lawsuit without joinder of the [assignor] allow[ed] the court to litigate all the rights to the patent without fear of the [assignor] bringing a subsequent lawsuit." *Id.* Moreover, had the court dismissed the action, plaintiff could have simply reinstated the lawsuit. *Id.*

I am persuaded by the logic of the district courts' positions in *Procter & Gamble* and *Ciba–Geigy* to allow plaintiffs to maintain this action in their own names. As in those cases, the assignor in this case possesses no interest in this lawsuit. By virtue of the written assignment it relinquished to plaintiff all rights in the '780 patent. As a result, the parties to the present action will be able to gain complete relief and defendant Beloit need not fear multiple and possibly inconsistent lawsuits with regard to the '780 patent. Furthermore, a decision that the written assignment did not cure the standing defect would simply lead plaintiffs to amend the complaint to add the assignor and then dismiss it as an unnecessary party, or simply to reinstate the lawsuit. Either alternative would result in needless delay and needless expenditure of the parties' and the court's resources. Thus, holding that the written assignment executed only thirteen days after

suit was commenced did not cure plaintiffs' standing defect would only "exalt form over substance."

## ORDER

IT IS ORDERED that defendant's motion to dismiss plaintiffs' complaint for lack of standing is denied.