The PROCTER & GAMBLE COMPANY, Plaintiff and Counterclaim Defendant,

v.

PARAGON TRADE BRANDS, INC., Defendant and Counterclaimant.

Civil A. No. 94–16 LON.

United States District Court, D. Delaware.

Dec. 28, 1995.

Robert H. Richards, III, of Richards, Layton & Finger, Wilmington, Delaware (John F. Sweeney, of counsel); Richard C. Komson and Seth J. Atlas, of Morgan & Finnegan, New York City, Timothy C. Hester and Salvatore G. Rotella, Jr., of Covington & Burling, Washington, DC; for Procter & Gamble Company.

James M. Mulligan, Jr., of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware (Stephen B. Judlowe, of counsel); Porter F. Fleming, Michael F. Hurley, of Hopgood, Calimafde, Kalil & Judlowe, New York City, for Paragon Trade Brands, Inc.

LONGOBARDI, Chief Judge.

## I.

The Procter & Gamble Company ("P & G") instituted this action on January 24, 1994, alleging that Paragon Trade Brands, Inc. ("Paragon"), infringed certain P & G patents by making, selling and/or using disposable baby diapers having dual leg cuffs. Paragon filed its Answer and Counterclaims on April 20, 1994. Paragon's Second Counterclaim alleged that P & G infringed upon the Pieniak et al. United States Patent No. 5,098,423 ("'423 Patent"). (Docket Item "D.I." 146 at A154–55). Pending before the court is P & G's Motion for Summary Judgment Dismissing Paragon's Patent Infringement Counterclaim for Lack of Standing (D.I. 144). In addition to a lack of standing, P & G asserts that the counterclaim should be dismissed under Fed.R.Civ.P. 19 for failure to join an indispensable party.

## II.

■ A federal court is obligated to examine its jurisdiction. Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Pfizer Inc. v. Elan Pharmaceutical Research Corp.*, 812 F.Supp. 1352, 1356 (D.Del.1993). Standing cannot be inferred from the averments of the pleadings, *Grace v. American Cent. Ins. Co.*, 109 U.S. 278, 284, 3 S.Ct. 207, 211, 27 L.Ed. 932 (1883), but "must affirmatively appear in the record," *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511–12, 28 L.Ed. 462 (1884).

■ The party seeking jurisdiction bears the burden to establish that it is a proper party to invoke judicial resolution of the dispute. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990); *Ortho Pharmaceutical Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1032–33 (Fed.Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 274, 133 L.Ed.2d 195 (1995). In response to a motion for summary judgment on the issue of standing, the party alleging standing must set forth by affidavit or by other appropriate means "specific facts" to support its standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992).

■ It is undisputed that on April 20, 1994, Paragon was not the owner of the '423 Patent,[1] but was a sublicensee.[2] (D.I. 148 at

1. McNeil–PPC, Inc., a subsidiary of Johnson & Johnson, owned the '423 Patent at the time of the counterclaim, and apparently is still the owner. Weyerhaeuser Company obtained an exclusive license to utilize the technology included in the '423 Patent throughout most of the world. The exclusive license included the right to grant sublicenses. (D.I. 146 at A17).

2. Paragon received a sublicense from Weyerhaeuser Company. The sublicense did not trans-

1); (D.I. 145 at 21). In the counterclaim, Paragon alleged that it was "an exclusive sublicensee under the '423 Patent with respect to the manufacture, use and sale of infant diapers." (D.I. 146 at A154–55).

■ Paragon does not rely on its sublicense to support its standing.[3] Paragon argued in opposition to the pending motion:

> At the time of the counterclaim, April 20, 1994, Paragon was an exclusive sublicensee under the '423 patent with an understanding that it would soon become the owner. It *did* become the owner of the '423 patent by Agreement dated May 4, 1994.[4] The Agreement and its included Assignment provided for the transfer of the "essential rights" to the '423 patent.

(D.I. 148 at 1) (emphasis in original). Paragon relies on the subsequent assignment to support its standing to maintain its Second Counterclaim for infringement of the '423 Patent.

Paragon makes three arguments in support of its position. First, Paragon asserts that as an assignee of the entire interest in a patent, including the right to recover for past infringement, it has standing to maintain a suit for infringement, regardless of the date its interest was obtained. (D.I. 148 at 10). Second, Paragon argues that even if it had no standing on the date the counterclaim was made, any "defect" in standing was "cured" when it received an assignment with a right to recover for past infringement. (D.I. 148 at 10). Third, Paragon argues that it was the "equitable owner" of the '423 Patent on the day that the counterclaim was filed because by April 20, 1994, "all concerned parties" had agreed to assign their rights in the patent to Paragon. (D.I. 148 at 13).[5]

---

fer the "essential rights to the patent" that are necessary to sue for infringement. *See Pfizer Inc. v. Elan Pharmaceutical Research Corp.*, 812 F.Supp. 1352, 1372 (D.Del.1993) (quoting *Ciba–Geigy v. Alza Corp.*, 804 F.Supp. 614, 630 (D.N.J. 1992)). Those rights are "the right of exclusivity, the right to transfer and most importantly the right to sue infringers." *Pfizer*, 812 F.Supp. at 1372 (quoting *Calgon Corp. v. Nalco Chem. Co.*, 726 F.Supp. 983, 986 (D.Del.1989)); *see also, Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875 (Fed.Cir.1991) (finding that the grant of the right to sue for infringement is "particularly dispositive" in deciding whether a licensee has the right to sue without joining the patent owner).

3. It is well-settled that an exclusive licensee who does not possess the essential rights of the patent has no standing to assert a patent infringement claim in its own name without joining the owner of the patent. *See Independent Wireless Telegraph Co. v. Radio Corp. of America*, 269 U.S. 459, 466–67, 46 S.Ct. 166, 168–69, 70 L.Ed. 357 (1925); *Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 39–40, 43 S.Ct. 254, 257–58, 67 L.Ed. 516 (1923); *Ortho Pharmaceutical Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1030–31 (Fed.Cir.1995); *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1130–31 (Fed.Cir.1995); *Pfizer Inc. v. Elan Pharmaceutical Research Corp.*, 812 F.Supp. 1352, 1356 (D.Del.1993); *Calgon Corp. v. Nalco Chem. Co.*, 726 F.Supp. 983, 987–89 (D.Del.1989); *Philadelphia Brief Case Co. v. Specialty Leather Prods. Co.*, 145 F.Supp. 425, 428 (D.N.J.1956), *aff'd* 242 F.2d 511 (3d Cir.1957). Where an exclusive licensee brings suit in its own name, the patentee is generally an indis-

pensable party under Fed.R.Civ.P. 19. *Refac Int'l, Ltd. v. Mastercard Int'l, F.W.*, 758 F.Supp. 152, 157–58 (S.D.N.Y.1991). Paragon did not join McNeil–PPC, the owner of the '423 Patent. Consequently, Paragon did not have standing to sue for infringement as a licensee.

4. The assignment appears not to have been executed until August 18, 1994. (D.I. 146 at A185). Apparently, the assignment was not recorded in the United States Patent and Trademark Office until September 12, 1994. (D.I. 146 at A184). While there may be a dispute of fact regarding the effective date of the assignment, that dispute is immaterial because it is certain that the assignment took place after April 20, 1994, the date that the counterclaim was filed.

5. In addition to these three arguments in support of its standing, Paragon asserts that P & G should be judicially estopped from challenging Paragon's standing because P & G's positions in this case contradict P & G's positions in *Procter & Gamble Co. v. Kimberly–Clark Corp.*, 684 F.Supp. 1403 (N.D.Tex.1987). (D.I. 148 at 18 n. 16). The court finds this argument unpersuasive. First, there is no proof that P & G has taken inconsistent positions. The motion addressed in the Texas case was made by Raychem against Kimberly–Clark Corp. It is unclear what position P & G took on that motion, if any. Second, P & G is not "playing fast and loose with the courts." *See Scarano v. Central R.R. Co.*, 203 F.2d 510, 513 (3d Cir.1953). Significant developments in the law have occurred since 1987. Even if the positions taken in the two litigations were inconsistent, vigorous advocacy could justify the different arguments.

■ Paragon's third argument is without merit. An assignment is effective only if it is in writing. 35 U.S.C. § 261; *United States v. Solomon*, 825 F.2d 1292, 1296 (9th Cir.1987), *cert. denied*, 484 U.S. 1046, 108 S.Ct. 782, 98 L.Ed.2d 868 (1988) ("in the context of an assignment of a patent, they can agree verbally until the cows come home, and that patent isn't assigned until there's a writing") (quoting the district court). There was no writing assigning the '423 Patent before April 20, 1994. Although under some circumstances a party will be considered the equitable title holder of a patent, Paragon has not been adjudged to be an equitable title holder. *Cf. Papazian v. American Steel & Wire Co. of New Jersey*, 155 F.Supp. 111 (N.D.Ohio 1957). In any event, equitable ownership does not entitle the party to sue for money damages,[6] a remedy at law, in an action for infringement. *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1581 (Fed. Cir.1991).

■ According to 35 U.S.C. § 281, a civil action for patent infringement may be brought by "a patentee." The word "patentee" is defined by statute to "include[ ] not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d). The general rule is that a party seeking money damages for patent infringement must have held legal title to the patent during the time of the infringement. *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579 (Fed.Cir. 1991). When, however, an assignment of a patent is coupled with an assignment of a right of action for past infringements, then the assignee may bring a claim against past infringers. *Arachnid*, 939 F.2d at 1579 n. 7. Paragon now has an assignment with a right of action for past infringements. (D.I. 146 at A186). If the Second Counterclaim were

brought today, there would be no question that Paragon has standing to assert it.

This does not address, however, whether a party claiming infringement must have standing to bring the claim at the time it is pled. That question has been considered in a number of cases. *See Switzer Bros., Inc. v. Byrne*, 242 F.2d 909 (6th Cir.1957); *Valmet Paper Mach., Inc. v. Beloit Corp.*, 868 F.Supp. 1085 (W.D.Wis.1994); *Quiedan Co. v. Central Valley Builders Supply Co.*, 1993 WL 451503 (N.D.Cal. Oct. 28, 1993), *aff'd without op.*, 31 F.3d 1178 (Fed.Cir.1994); *Ciba–Geigy Corp. v. Alza Corp.*, 804 F.Supp. 614 (D.N.J.1992); *Hockerson–Halberstadt, Inc. v. Nike, Inc.*, 779 F.Supp. 49, 54 (E.D.La.1991); *Afros S.p.A. v. Krauss–Maffei Corp.*, 671 F.Supp. 1402 (D.Del.1987), *aff'd without op.*, 848 F.2d 1244 (Fed.Cir.1988); *Clayhill Resources, Ltd. v. MSB Indus., Inc.*, No. 80 Civ. 11645 (RLC) (S.D.N.Y. Nov. 3, 1980).[7]

Some courts have held that a party's standing to maintain a patent infringement claim is determined by that party's rights on the day the claim was filed. *See Switzer Bros.*, 242 F.2d at 913; *Quiedan Co.*, 1993 WL 451503 at *2; *Afros*, 671 F.Supp. at 1445; *Clayhill Resources*, No. 80 Civ. 11645 (RLC), slip op. *See also, Arachnid*, 939 F.2d at 1579 (rejecting the plaintiff's "Back-to-the-Future" theory of standing). Allowing a subsequent assignment to automatically cure defects in standing at the time of pleading would "impermissibly expand the class of persons able to sue for infringement." *Afros*, 671 F.Supp. at 1446.

Other cases present compelling policy rationales for the opposite position. Those courts have found that not allowing subsequent developments to cure defects in plead-

---

6. Paragon has sued for money damages and equitable relief. (D.I. 146 at A157). In such mixed claims, it is proper to treat the action as one at law. *See Pfizer*, 812 F.Supp. at 1356 n. 5.

7. In *Valmet*, 868 F.Supp. at 1089, the court interpreted *Procter & Gamble Co. v. Kimberly–Clark Corp.*, 684 F.Supp. 1403 (N.D.Tex.1987), to have held that "the assignee had standing to maintain the infringement suit solely in its own name,

despite its lack of standing on the day it instituted the action." Similarly, the court in *Ciba–Geigy*, 804 F.Supp. at 636, interpreted the court in *Procter & Gamble* to have held that "where a licensor assigned its interest in the patent a few weeks after the licensee commenced suit, the licensee had standing to bring the action...." In contrast to those interpretations, the standing of the licensee that became the assignee, Proctor & Gamble, was not at issue in *Procter & Gamble*.

ing would be to "exalt form over substance." *Valmet,* 868 F.Supp. at 1090; *Ciba–Geigy,* 804 F.Supp. at 637. If the action were dismissed, the party could simply refile the lawsuit. If a subsequent assignee were required to join the previous owner/assignor of the patent as an indispensable party, the court would have to simultaneously dismiss that prior owner/assignor because it would no longer possess any interest in the litigation. *Valmet,* 868 F.Supp. at 1089.

■ As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignments in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day. The court agrees, therefore, that a party must have standing to bring a patent infringement claim at the time it is brought.

*See Minneapolis & St. Louis R.R. Co. v. Peoria & Pekin Union Ry. Co.,* 270 U.S. 580, 586, 46 S.Ct. 402, 404–05, 70 L.Ed. 743 (1926) ("jurisdiction of the lower court depends upon the state of things existing at the time the suit was brought.").[8]

■ An initial defect in standing, however, is remediable. *See Hockerson–Halberstadt,* 779 F.Supp. at 53 (finding defect remedied by amended complaint). The Federal Rules of Civil Procedure allow, under certain circumstances, for parties to amend their pleadings and for those pleadings to relate back to the day they were originally filed. *See* Fed.R.Civ.P. 15. The court would be required under the Rules to freely grant Paragon leave to amend its answer to assert the counterclaim for infringement, along with the jurisdictional basis for that counterclaim, if Paragon could show that "justice so requires." Fed.R.Civ.P. 15(b). That amendment would relate back to the date of the original pleading if "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading." Fed.R.Civ.P. 15(c).

Federal Rule of Civil Procedure 19 also provides an affirmative cure for some patent infringement claimants who do not have standing initially. *See, e.g., Control Compo-*

The issue was whether the assignor, Raychem, was a necessary, indispensable or proper party to the litigation. *See Procter & Gamble,* 684 F.Supp. at 1404–1407. The court found that it was not. *Id.* at 1407.

**8.** The facts of the *Peoria* case are instructive. On August 6, 1925, the plaintiffs sought an injunction to enjoin the defendant from refusing to switch railroad cars for them. The basis of the suit was an Order issued on April 13, 1922, by the Interstate Commerce Commission requiring defendant to switch the cars. The district court dismissed the case for lack of jurisdiction because the Interstate Commerce Commission order was not in effect when the action was brought. *Id.* at 582, 46 S.Ct. at 403. The Supreme Court agreed that the order had been rescinded prior to the commencement of the action. *Id.* at 584, 46 S.Ct. at 404. The plaintiffs argued that "later action of the Commission restored" the order. Primarily, the "later action" referred to by the plaintiffs consisted of the

Interstate Commerce Commission vacating the recision of the April 13, 1922, Order. The court found that this subsequent event, among others, "could not conceivably affect" the determination of jurisdiction. *Id.* at 586, 46 S.Ct. at 404–05. When suit was brought, the plaintiffs had no rights the violation of which the court could redress.

This decision should be contrasted with more recent precedent concerning ripeness. *See Regional Rail Reorganization Cases,* 419 U.S. 102, 140, 95 S.Ct. 335, 356–57, 42 L.Ed.2d 320 (1974); *see also, Buckley v. Valeo,* 424 U.S. 1, 114, 96 S.Ct. 612, 680, 46 L.Ed.2d 659 (1976) (applying *Regional Rail Reorganization Cases*); *Assiniboine and Sioux Tribes of Fort Peck Indian Reservation v. Board of Oil and Gas Conservation of Montana,* 792 F.2d 782, 788 (9th Cir.1986) (same). Standing tells us who may bring an action, while ripeness determines when a proper party may bring an action. *Presbytery of New Jersey v. Florio,* 40 F.3d 1454, 1462 (3d Cir. 1994).

*nents, Inc. v. Atlantic Richfield Co.*, 439 F.Supp. 654, 656 (C.D.Cal.1977) (permitting exclusive licensee to amend complaint to join patent owner under Rule 19); *see also, Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1133 (Fed.Cir.1995) (joinder of patentee by exclusive licensee is "required as a matter of statutory standing" and is consistent with Rule 19). In *Calgon Corp. v. Nalco Chem. Co.*, 726 F.Supp. 983, 989 (D.Del.1989), the court held that Calgon, an exclusive licensee, had no standing to sue for patent infringement in its own name. Calgon would have standing to maintain the suit only if it could amend its complaint to add the patent owner as a plaintiff. *Id.* at 990. The court found it "unfortunate" that Calgon briefed the issue only under Fed.R.Civ.P. 15(a), because if the patent owner refused to join voluntarily, then the Fed.R.Civ.P. 19 joinder provisions would be relevant. *Id.* The court allowed amendment under Fed.R.Civ.P. 15, but if the patent owner failed to make a voluntary appearance, then the court would dismiss the action unless Calgon filed a motion to join the patent owner under Fed.R.Civ.P. 19. *Id.*

■ Here, the defect is not the absence of an indispensable party, as will be discussed below, but Paragon's failure to properly assert standing as an assignee. The lack of standing is not automatically cured by a subsequent assignment. Rather, Paragon must move to amend its answer to assert facts that give it standing to maintain the patent infringement claim. Paragon has not yet moved this court to amend its answer. *Cf. Solarex Corp. v. Arco Solar, Inc.*, 805 F.Supp. 252, 260 n. 6 (D.Del.1992) (no dismissal because plaintiff filed supplemental complaint alleging a subsequent assignment). As a result, the court will dismiss Paragon's Second Counterclaim without prejudice.

This court's decision that the dismissal will be without prejudice is not uniformly supported by precedent. The Sixth Circuit affirmed the district court's dismissal of *Switzer Bros.* with prejudice. 242 F.2d at 913. In *Afros*, 671 F.Supp. at 1405, the issue of standing was decided after trial. The court did not clearly state in its opinion whether the lack of standing required dismissal with or without prejudice. It can be inferred, however, that the court intended dismissal of the infringement counterclaim with prejudice on the basis of standing, because it considered its further holding that the patent was not infringed to be merely an "alternative" to its decision on standing. *Id.* at 1405. If the counterclaim was to be dismissed without prejudice based on standing but with prejudice based on a lack of infringement, then the finding of infringement would be more than just an alternative. It would foreclose further litigation of the issue. In *Quiedan Co.*, 1993 WL 451503 at *3, the court did not specify whether the dismissal was with or without prejudice, which under the Federal Rules of Civil Procedure would make the dismissal with prejudice. *See* Fed.R.Civ.P. 41(b).[9] The court in *Clayhill Resources*, slip op., mentioned that Clayhill might "refile its action." Thus, the court in *Clayhill Resources* intended dismissal without prejudice.

■ The better practice in most circumstances is to dismiss the claim without prejudice. A decision regarding standing is not a decision on the merits. When a party is dismissed on the basis of standing it generally should not be barred from properly litigating the issue once it obtains standing.[10]

### III.

P & G has moved to dismiss the Second Counterclaim not only on the basis of stand-

9. Fed.R.Civ.P. 41(b) provides in relevant part: "Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits." The court in *Quiedan* based its decision on standing, not on any failure to join an indispensable party. Therefore, the dismissal was with prejudice.

10. Dismissal of the counterclaim without prejudice does not foreclose a subsequent finding that the infringement claim was a compulsory counterclaim and should have been brought in this litigation. If Paragon decides not to seek to amend its answer, but to assert the infringement claim in a later action, it does so at its own peril. *Cf.* Fed.R.Civ.P. 13(a) and 13(e).

ing, but also for failure to join an indispensable party under Fed.R.Civ.P. 19. The party that is allegedly indispensable is Johnson & Johnson ("J & J"), which P & G equates with J & J's subsidiary McNeil–PPC, Inc., ("PPC"), the owner of the patent at the time the counterclaim was brought. P & G quotes this court's decision in *Pfizer Inc.*, 812 F.Supp. at 1375, for the proposition that "A patent owner should be viewed as a necessary party if it retains 'any interest' in the patent." (D.I. 145 at 27). While this statement of the law remains accurate, it does not determine whether in deciding if a party is necessary and indispensable under Fed. R.Civ.P. 19, the court looks to the date of the pleading or to the current date.

▉▉▉▉ Contrary to the approach in determining standing questions, the question of whether a party is necessary or indispensable under Fed.R.Civ.P. 19 is tested by looking at the status of the parties at the current time rather than at the time the claim is filed. *Terrebonne Land Dev. Corp. v. Superior Oil Co.*, 65 F.R.D. 375, 377 (E.D.La. 1974). In *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875–76 (Fed.Cir.1991), the court held that the owner of a patent is not a necessary party where the owner has transferred all substantial rights including the right to sue for infringement. *See also, DSM Resins U.S. Inc. v. EMS–American Grilon Inc.*, 14 U.S.P.Q.2d 1890 (D.S.C.1990) (assignor is not indispensable party). There is no question that J & J and PPC have transferred to Paragon all substantial rights under the '423 Patent, including all rights to sue for infringement. Therefore, under *Vaupel* nei-

ther J & J nor PPC is a necessary party on the basis of PPC's ownership of the patent on the date that the counterclaim was pled.[11]

▉▉▉ P & G argues that J & J and PPC are necessary parties because their absence "may prejudice P & G by subjecting P & G to the risk of liability" that would be inconsistent with an Arbitration Agreement it entered with PPC on February 15, 1993. (D.I. 146 at 27). Under paragraph 1.4 of the Arbitration Agreement, PPC waived any potential infringement claims against P & G relating to the manufacture, use and sale of "Current Diaper Products," which consisted of P & G's current PAMPERS and LUVS disposable diapers, and current ATTENDS briefs and incontinence products. (D.I. 146 at A127–28). Paragon argued in its brief that its counterclaim for infringement did not include these Current Diaper Products. Paragon also asserted that it would not be bound by the Arbitration Agreement. (D.I. 148 at 18–20).

P & G is not so prejudiced by the absence of J & J and PPC that "complete relief cannot be accorded among those already parties." *See* Fed.R.Civ.P. 19(a). If Paragon chooses to seek leave of court to file a patent infringement counterclaim, and if such leave is granted, and if the counterclaim asserts that the "Current Diaper Products" referred to in the Arbitration Agreement infringe, then P & G can plead, if it so chooses, the Arbitration Agreement as a defense to that counterclaim. If after these contingencies are resolved it is shown that J & J or PPC is a necessary party to this action, then P & G can seek its joinder. Currently, however, J & J and PPC are not necessary parties. A party that is not necessary under Fed. R.Civ.P. 19(a) cannot be indispensable under Fed.R.Civ.P. 19(b). *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d

---

11. J & J and PPC are not even proper parties. When rights to a patent are effectively assigned, the assignor retains no further rights in that which was assigned and as a result has no stake in the outcome of the litigation. *Aluminum Co. of America v. Norton Co.*, 27 U.S.P.Q.2d 1317, 1318–19, 1993 WL 330628 (W.D.Pa.1993); *Maruzen Int'l Co. v. Bridgeport Merchandise, Inc.*, 770 F.Supp. 155, 159 n. 5 (S.D.N.Y.1991); *Irving Air Chu'e Co. v. Switlik Parachute & Equip. Co.*,

26 F.Supp. 329, 330 (D.N.J.1939). The court in *Procter & Gamble Co. v. Kimberly–Clark Corp.*, 684 F.Supp. 1403 (N.D.Tex.1987), held that a company that assigns a patent after the initiation of litigation is no longer an interested party and should be dismissed. The court in *Procter and Gamble* dismissed Raychem as a party because Raychem had assigned all of its rights to P & G subsequent to the initiation of the litigation. *Id.* at 1407.

399, 405 (3d Cir.1993); *Vaupel,* 944 F.2d at 876 n. 1; *Ciba–Geigy,* 804 F.Supp. at 633. Consequently, J & J and PPC are not indispensable parties.

## IV.

On April 20, 1994, Paragon did not have standing to bring the Second Counterclaim for infringement without joining the patent owner. The subsequent assignment of the '423 Patent to Paragon does not automatically cure that initial defect in standing. Paragon has not moved the court to amend its answer to cure the defect in standing. Therefore, the Second Counterclaim will be dismissed without prejudice.

Paragon is now the assignee of the '423 Patent. J & J and PPC have no substantial rights left in the '423 Patent. They are not necessary or indispensable parties to this litigation on the basis of their prior ownership of the patent. Furthermore, P & G has failed to show that its rights are prejudiced by the absence of J & J and PPC. As a result, the dismissal of the Second Counterclaim will not be based on the failure to join an indispensable party.