184 P.3d 821

**INDYMAC BANK, Plaintiff–Appellee,**

v.

**Vic Garo MIGUEL and Estrella Garin Miguel, Defendants–Appellants,**

and

**American Savings Bank, F.S.B.; Hawaii-USA Federal Credit Union, fka Oahu Educational Employees Federal Credit Union; Newtown Estates Community Association; Director, Department of Taxation, State of Hawai'i, Defendants,**

and

**John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; Doe Entities 1–10**

and

**Doe Governmental Units 1–10, Defendants.**

and

**Indymac Bank, F.S.B., Plaintiff–Appellee,**

v.

**Vic Garo Miguel and Estrellita Garin Miguel, Defendants–Appellants**

and

**American Savings Bank, F.S.B.; HawaiiUSA Federal Credit Union, fka Oahu Educational Employees Federal Credit Union; Director, Department of Taxation, State of Hawai'i, Defendants–Appellees,**

and

**Newtown Estates Community Association; John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; Doe Entities 1–10**

and

**Doe Governmental Units 1–10, Defendants.**

Nos. 26881, 27406, 27561.

Intermediate Court of Appeals of Hawai'i.

May 9, 2008.

As Corrected July 17, 2008.

508

Gary Victor Dubin, on the briefs, Honolulu, for Defendants–Appellants.

Steven T. Iwamura, Robert M. Ehrhorn, Jr. (Clay Chapman Crumpton Iwamura & Pulice), Honolulu, on the briefs, for Plaintiff–Appellee.

WATANABE, Presiding Judge, FOLEY and FUJISE, JJ.

Opinion of the Court by FUJISE, J.

Defendants–Appellants Vic Garo Miguel and Estrellita Garin Miguel (Estrellita) (collectively Appellants) appeal from the decree of foreclosure entered on September 9, 2004 in No. 26881, the judgment confirming the sale entered on June 30, 2005 in No. 27406, and the order expunging the notices of pendency of action entered on September 20, 2005 in No. 27561, rendered by the Circuit Court of the First Circuit (circuit court).[1] The September 9, 2004 decree of foreclosure was entered pursuant to the circuit court's findings of fact and conclusions of law granting the July 19, 2004 motion for summary judgment filed by Plaintiff–Appellee Indy-Mac Bank (IndyMac). The June 30, 2005 judgment confirming the sale was entered pursuant to the order confirming the sale and the writ of possession, also entered on June 30, 2005.

### Background

Appellants executed and delivered to Alliance Bancorp (Alliance) a promissory note (Note) for $532,000.00, dated December 1, 1994, and signed on December 2, 1994. The Note was secured by a mortgage (Mortgage) on Appellants' residence (Property), also dated December 1, 1994, but acknowledged before a notary on December 2, 1994. The Mortgage was recorded in the Land Court by the Office of the Assistant Registrar of the Land Court for the State of Hawai'i on December 14, 1994. By an assignment

---

1. The Honorable Karen N. Blondin presided.

agreement dated December 1, 1994 and recorded in Land Court on October 17, 1996, the Note and Mortgage were assigned to the Bank of New York (BNY).

On November 7, 1997, Appellants sent a notice of cancellation to BNY's designated agent and thereby initiated proceedings under the Truth–in–Lending Act, 15 United States Code §§ 1601–1693 (1968) (TILA) to rescind the Mortgage. Immediately subsequent to mailing the notice, Appellants stopped making payments on the loan. Estrellita filed a complaint seeking to enforce her rights under TILA in the United States District Court for the District of Hawai'i (federal district court).

On August 2, 2000, the federal district court held a bench trial and ruled in favor of Estrellita. BNY appealed the district court's decision to the United States Court of Appeals for the Ninth Circuit (Ninth Circuit), which, on November 4, 2002, remanded the case to the federal district court with instructions to dismiss the case for lack of subject matter jurisdiction. *Miguel v. Country Funding Corp.*, 309 F.3d 1161 (9th Cir.2002).

The instant litigation commenced on April 4, 2003, when IndyMac filed a complaint against Appellants in the circuit court. The complaint prayed for, *inter alia*, a determination of the amounts due under the Note and the authorization of a foreclosure sale of the Property under the Mortgage. However, BNY's interest in the Note and Mortgage was not assigned to IndyMac until June 6, 2003, the date BNY and IndyMac executed an assignment agreement. The assignment agreement was subsequently recorded with the Land Court on July 15, 2003.

IndyMac filed a second[2] motion for summary judgment on July 9, 2004 which Appellants opposed on August 4, 2004. The circuit court heard argument on August 18, 2004 and granted the motion at the end of the hearing. The order granting the motion for summary judgment, the decree of foreclosure, and the judgment were entered on September 9, 2004. Appellants filed their notice of appeal from the September 9, 2004

judgment on October 11, 2004, resulting in appeal No. 26881. At the February 2, 2005 foreclosure auction, the Property was sold for $1,069,897.00.

On May 9, 2005, IndyMac moved for an order confirming the foreclosure sale. On June 30, 2005, over Appellants' objection, the circuit court entered an order and judgment granting IndyMac's motion for an order confirming the foreclosure sale, as well as a writ of possession. Appellants filed a notice of appeal from the June 30, 2005 judgment on July 14, 2005, resulting in appeal No. 27406.

On July 14, 2005, Appellants recorded two notices of pendency of action corresponding to the two appeals. IndyMac moved to expunge the notices of pendency of action on August 11, 2005 which the circuit court granted by order dated September 20, 2005. Appellants filed their notice of appeal from this order on October 20, 2005, resulting in appeal No. 27561. A deficiency judgment in the amount of $47,655.30 was entered in favor of IndyMac on October 26, 2005.

## Standard of Review

### I. Summary Judgment

■ The circuit court's ruling on the motion for summary judgment is reviewed de novo, or under the same standard as applied by the lower court. *Mottl v. Miyahira*, 95 Hawai'i 381, 388, 23 P.3d 716, 723 (2001); *see also Querubin v. Thronas*, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005).

### II. Standing

■ The court's jurisdiction may not be invoked by a party who does not have standing to bring suit. *Mottl*, 95 Hawai'i at 388, 23 P.3d at 723. "Whether the circuit court had jurisdiction to hear the plaintiff's complaint presents a question of law, reviewable de novo." *Id.*

### III. Expungement of a Lis Pendens

■ An order expunging notice of pendency of action is reviewed under the abuse

---

2. The circuit court denied IndyMac's first motion for summary judgment by order dated January 13, 2004.

of discretion standard. *S. Utsunomiya Enters., Inc. v. Moomuku Country Club*, 75 Haw. 480, 504, 866 P.2d 951, 964 (1994). "In determining the validity of a *lis pendens*, courts have generally restricted their review to the face of the complaint." *Id.* at 505, 866 P.2d at 964.

## Discussion

Appellants raise four identical points of error in both appeal Nos. 26881 and 27406. Appellants challenge (1) IndyMac's standing to bring this suit; (2) the failure of the circuit court to treat a Federal Reserve Board ruling concerning TILA as effectively overruling the Ninth Circuit's decision; and (3) the circuit court's granting of IndyMac's motion for summary judgment. Finally, we will address Appellants' appeal from the expungement of their notices of lis pendens in appeal No. 27561.

## I. IndyMac Had Standing.

In their second point, Appellants offer two bases for their contention that IndyMac lacked standing. First, Appellants contend that Alliance assigned its interest in Appellants' Note and Mortgage to BNY one day prior to execution of the Note and Mortgage in favor of Alliance. Appellants reason that, as Alliance did not yet have an interest in the Note and Mortgage when it purported to assign them to BNY, BNY received no interest in Appellants' Note and Mortgage, and therefore, was unable to convey an interest in the Note and Mortgage to IndyMac. Thus, Appellants conclude that IndyMac lacks an interest in the Note and Mortgage and could not have been injured by a default on the Mortgage by Appellants.

Appellants also argue, in support of their second point, that IndyMac initiated this lawsuit before assignment of BNY's interest in Appellants' Note and Mortgage to IndyMac was recorded. According to Appellants, by initiating the lawsuit prior to recordation, even assuming there was an interest to convey by BNY, IndyMac effectively had no interest at the onset of this litigation.

In their third point on appeal, Appellants raise their final challenge to IndyMac's standing. Appellants contend that at the time the mortgage was executed, Alliance, whom Appellants contend was acting as their mortgage broker, did not possess a valid mortgage broker's license. As such, they argue, the mortgage was not valid.

▮ Standing is the threshold requirement borne by the party bringing suit to allege "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends ... [.]" *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). In other words, "[s]tanding is that aspect of justiciability focusing on the party seeking a forum rather than on the issues he wants adjudicated." *Life of the Land v. Land Use Comm'n of State of Hawaii*, 63 Haw. 166, 172, 623 P.2d 431, 438 (1981). Absent a demonstration that a plaintiff has such a sufficient personal stake in the dispute, a court lacks jurisdiction and cannot exercise its remedial powers to resolve the matter. *In re Application of Matson Navigation Co. v. Fed. Deposit Ins. Corp.*, 81 Hawai'i 270, 275, 916 P.2d 680, 685 (1996).

A defect in standing could preclude this court from reaching Appellants' merit-based challenges because "[s]tanding is concerned with whether the parties have the right to bring suit." *Pele Def. Fund v. Puna Geothermal Venture*, 77 Hawai'i 64, 67, 881 P.2d 1210, 1213 (1994) (quoting *Maryland Waste Coal. v. Maryland Dep't of Environ.*, 84 Md. App. 544, 548, 581 A.2d 60, 61 (1990), *rev'd* on other grounds by *Med. Waste Assocs., Inc. v. Maryland Waste Coal., Inc.*, 327 Md. 596, 612 A.2d 241 (1992)) (internal quotation marks omitted).

▮ To assess whether standing exists, the so called "injury in fact" test is employed. *Bush v. Watson*, 81 Hawai'i 474, 479, 918 P.2d 1130, 1135 (1996). Under this three-prong test, standing arises where "(1) [the plaintiff] has suffered an actual or threatened injury as a result of the defendant's wrongful conduct, (2) the injury is fairly traceable to the defendant's actions, and (3) a favorable decision would likely provide relief for a plaintiff's injury." *Id.*

All of Appellants' standing arguments turn solely on whether IndyMac had a sufficient interest in the Mortgage to have suffered an injury from Appellants' default. Thus, the first element of the test, which requires an actual or threatened injury, is the only prong in dispute. To meet this first prong of the analysis "the plaintiff must show a distinct and palpable injury to himself or herself. The injury must be distinct and palpable, as opposed to abstract, conjectural, or merely hypothetical." *Mottl*, 95 Hawai'i at 389, 23 P.3d at 724 (internal citations, quotation marks, and brackets omitted).

## A. The Assignment From Alliance to BNY Was Valid

In their first standing argument, Appellants argue that the assignment of the Mortgage from Alliance to BNY was executed on December 1, 1994, and predated the execution of the Mortgage[3] on December 2, 1994. Appellants contend that because the execution of the assignment agreement predated the existence of the Mortgage, the assignment failed to transfer any interest at all.

It is a fundamental concept of property law that a person may contract to sell an interest in land which he does not own at the time of the contract. *Barkhorn v. Adlib Assocs., Inc.*, 222 F.Supp. 339, 341 (D.Haw. 1963). "There is no implied covenant that he has a clear, or any, title at the time the contract is entered into. His only obligation is to be able to convey a clear title at the time agreed upon for a conveyance." *Id.* Additionally, according to Hawaii Revised Statutes (HRS) § 501–101 (1993):

No deed, mortgage, or other voluntary instrument, except a will and a lease for a term not exceeding one year, purporting to convey or affect registered land, shall take effect as a conveyance or bind the land, but shall operate only as a contract between the parties, and as evidence of authority to

the registrar or assistant registrar to make registration. The act of registration shall be the operative act to convey or affect the land . . . .

Even if the execution of the assignment agreement occurred one day prior to the execution of the Note and Mortgage, the registration of the assignment of Alliance's interest in the land did not occur until October 17, 1996. This date, pursuant to HRS § 501–101, acts as the time of conveyance and was nearly two years after the execution of the Note and Mortgage. There is nothing in the record to indicate that title was not conveyed or that there was any legally relevant defect in the assignment. As such, it appears from the record that the Note and Mortgage were properly assigned by Alliance to BNY.

## B. IndyMac's Failure to Properly Record its Interest in the Mortgage Prior to Initiating the Lawsuit is Not a Barrier to Standing.

Appellants next contend that, as the assignment to IndyMac from BNY was not executed until just over two months after the initiation of the underlying lawsuit, IndyMac had no interest in the Property at the time it filed the lawsuit, and consequently it did not have a sufficient interest in the litigation to perfect standing.

It is widely recognized that "[t]he jurisdiction of the lower court depends upon the state of things existing at the time the suit was brought." *Minneapolis & St. L.R. Co. v. Peoria & P.U. Ry. Co.*, 270 U.S. 580, 586, 46 S.Ct. 402, 70 L.Ed. 743 (1926); *see Norris v. Six Flags Theme Parks, Inc.*, 102 Hawai'i 203, 206–07, 74 P.3d 26, 30 (2003); *see also Bush v. Hawaiian Homes Comm'n*, 76 Hawai'i 128, 133, 870 P.2d 1272, 1277 (1994). By implication, standing, which is a threshold for jurisdiction, is also assessed at the induction of a suit.[4] *See Hawaii Med.*

---

3. Although the Mortgage states that it was "given" on December 1, 1994, the Mortgage was notarized on December 2, 1994, leading to the inference that it was actually signed on December 2, 1994.

4. Even so, where a defect in standing is identified prior to judgment, a bevy of options are available to the litigants. *See Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F.Supp. 305, 310 (D.Del.1995). Under Hawai'i Rules of Civil Procedure (HRCP) Rule 15, a party may amend their pleadings to relate back to the day

*Ass'n v. Hawaii Med. Service Ass'n, Inc.,* 113 Hawai'i 77, 94, 148 P.3d 1179, 1196 (2006).

■ There is nothing in the record to demonstrate that IndyMac had any legally recognizable interest in the Property or the Mortgage at the time IndyMac filed the complaint which initiated this proceeding. As such, it is difficult to see how IndyMac could have been harmed by Appellants' default on the Mortgage at the time the complaint was filed and consequently how it had standing to proceed with the claim. However, an issue of first impression in this jurisdiction and the issue presented in this case, is whether a post-complaint, prejudgment perfection of an interest is effective to cure an unnoticed defect in standing at the initiation of the lawsuit.

While not addressing standing directly, the United States Supreme Court's decisions demonstrate an unfolding discussion about the propriety of post-complaint cures to jurisdictional defects. In *Mullaney v. Anderson,* 342 U.S. 415, 72 S.Ct. 428, 96 L.Ed. 458 (1952), the petitioner challenged the standing of the plaintiff-respondent union for the first time before the Supreme Court. In response to the challenge, the union under Federal Rules of Civil Procedure Rule 21, attempted to join two of its members as parties plaintiff to perfect standing. *Mullaney,* 342 U.S. at 416–17, 72 S.Ct. 428. The Court noted that, "[t]o dismiss the present petition and require the new plaintiffs to start over in the District Court would entail needless waste and runs counter to effective judicial administration-the more so since, with the silent concurrence of the defendant, the original plaintiffs were deemed proper

parties below." *Id.* at 417, 72 S.Ct. 428. Because "their earlier joinder [would not] have in any way affected the course of the litigation[,]" the Court allowed the union members to be joined as plaintiffs. *Id.*

Almost five decades later, the Supreme Court addressed an analogous issue involving subject-matter jurisdiction in *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). Addressing a lack of complete diversity which had been raised *sua sponte* by the Seventh Circuit Court of Appeals, the Supreme Court explained,

[w]e decline to disturb that deeply rooted understanding of appellate power, particularly when requiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention. Appellate-level amendments to correct jurisdictional defects may not be the most intellectually satisfying approach to the spoiler problem, but, as Judge Posner eloquently noted, because "law is an instrument of governance rather than a hymn to intellectual beauty, some consideration must be given to practicalities."

*Newman–Green,* 490 U.S. at 836–37, 109 S.Ct. 2218 (internal citation omitted). The Supreme Court affirmed the Seventh Circuit's dismissal of the non-diverse party to perfect jurisdiction, observing that, without the dismissal, the plaintiff would re-file its complaint against the diverse defendants, submit discovery materials already obtained, and proceed to a preordained judgment. *Id.* at 837, 109 S.Ct. 2218.

■ While federal case law is instructive, there are certain core differences be-

---

they were originally filed. *See* HRCP Rule 15. Thus, so long as IndyMac could demonstrate that "justice so requires," and BNY was willing to join, IndyMac could have amended its complaint to include BNY to perfect standing. HRCP Rule 15(a). The amendment would relate back because "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth ... in the original pleading[.]" HRCP Rule 15(c).

Alternatively, if BNY was unwilling to join, IndyMac could have used HRCP Rule 19 to join BNY because "complete relief cannot be accorded among those already parties[.]" However,

absent a remediable defect, a failure to have standing is grounds for a dismissal for lack of jurisdiction. *Mottl v. Miyahira,* 95 Hawai'i 381, 395, 23 P.3d 716, 730 (2001); *see* HRCP Rule 41(b)(3). Nevertheless, the litigants then have the opportunity to cure the defect, if possible, and re-file with proper standing at a later time. *See Procter & Gamble,* 917 F.Supp. at 310.

Appellants did not argue before the circuit court that IndyMac lacked standing because it had not obtained the assignment of their Mortgage until after IndyMac filed this lawsuit and IndyMac did not attempt to cure under either HRCP Rules 15 or 19.

tween the formulation of the standing doctrine in the federal courts and in Hawai'i's courts. For federal courts, standing is explicitly based on the case-or-controversy requirement of Article III of the United States Constitution. *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). As a component of the justiciability requirement, the injury in fact test of standing is considered to be the irreducible constitutional minimum. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (Blackmun, J., dissenting). The other justiciability doctrines— mootness, ripeness, and political questions— are considered prudential in nature and exist for the purpose of judicial self-governance, independent of the federal constitution. *Allen*, 468 U.S. at 750, 104 S.Ct. 3315. It follows that, given the mandatory nature of the case-or-controversy requirement in federal courts it would also be possible to perfect standing during the course of litigation in state courts where the state constitution does not contain case-or-controversy language.

■■■■■ The Hawaii State Constitution does not contain language similar to that upon which the federal "case-or-controversy" requirement is based, and Hawai'i's courts are thus not subject to analogous constitutionally derived requirements.[5] *Life of the Land*, 63 Haw. at 171, 623 P.2d at 438. However, as explained by the Hawai'i Supreme Court, despite the absence of a constitutional case-or-controversy requirement, "judicial power to resolve public disputes in a system of government where there is a separation of powers should be limited to those questions capable of judicial resolution and presented in an adversary context." *Id.* The state courts must "carefully weigh the wisdom, efficacy, and timeliness of an exercise of

their power before acting[.]" *Id.*, at 172, 623 P.2d at 438. As a result, "prudential rules of judicial self-governance founded in concern about the proper and properly limited role of courts in a democratic society" form the basis for Hawai'i's justiciability requirements, including standing. *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)) (internal quotation marks omitted).

■■■■■ In construing standing requirements as they arise in this jurisdiction, the Hawai'i Supreme Court has recognized some flexibility. In *Life of the Land*, the supreme court explained that the touchstone for standing in Hawai'i courts is "the needs of justice." 63 Haw. at 176, 623 P.2d at 441; *see also Mottl*, 95 Hawai'i at 389–90, 23 P.3d at 724–25. Employing this maxim, the court has found a sufficient interest in the litigation for standing purposes when activity on an adjacent property "threatens identifiable aesthetic or environmental harm." *Bremner v. City & County of Honolulu*, 96 Hawai'i 134, 140, 28 P.3d 350, 356 (App.2001); *see Life of the Land*, 63 Haw. at 176, 623 P.2d at 440–41. A sufficient interest may also arise where a plaintiff alleges harm to the plaintiff's exercise of cultural and religious interests. *Bremner*, 96 Hawai'i at 140, 28 P.3d at 356. Moreover, a plaintiff need not " 'wait until its concrete interests were injured' before bringing suit; the plaintiff need only show that it has concrete interests that will be injured if the threat materializes." *Kaho'Ohanohano v. State*, 114 Hawai'i 302, 321, 162 P.3d 696, 715 (2007) (quoting *Sierra Club v. Hawai'i Tourism Auth.*, 100 Hawai'i 242, 252 n. 16, 59 P.3d 877, 887 n. 16. (2002)).

Most recently, in *Kaho'Ohanohano*, members of the state's retirement system sued the state for alleged constitutional and statu-

---

5. "The case-or-controversy requirement ... has no bearing on the jurisdiction of [state] courts. Nothing in Art. III of the Federal Constitution prevents [a state appellate court] from rendering an advisory opinion concerning the constitutionality of [state] legislation if it considers it appropriate to do so." *Sec'y of State of Maryland v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 970–71, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) (Stevens, J., concurring).

Article VI, Section 1 of the Hawaii Constitution, which vests the State judiciary with authori-

ty, contains no "case-or-controversy" requirement. It reads:

The judicial power of the State shall be vested in one supreme court, one intermediate appellate court, circuit courts, district courts and in such other courts as the legislature may from time to time establish. The several courts shall have original and appellate jurisdiction as provided by law and shall establish time limits for disposition of cases in accordance with their rules.

tory violations resulting in monies being diverted from the retirement fund. *Id.* at 315, 162 P.3d at 709. Trustees of the retirement system intervened as plaintiffs, seeking declaratory and injunctive relief. *Id.* at 310, 162 P.3d at 704. The circuit court denied motions to dismiss based on standing and real party in interest and granted summary judgment in favor of the State of Hawai'i. *Id.*

Concluding that the original plaintiffs had not demonstrated an actual or threatened injury, the Hawai'i Supreme Court dismissed the original plaintiffs. *Id.* at 320–21, 355, 162 P.3d at 714–15, 749. However, the supreme court determined that the intervening trustees had suffered an injury in fact and proceeded to the merits of the case. *Id.* at 324–28, 162 P.3d at 718–22. Thus, while not addressing the point explicitly, the court seemed to sanction the cure of an initial lack of standing by the intervention of parties who could demonstrate an injury in fact.

The ability to cure the initial lack of standing has been addressed by a number of federal courts in the context of patent claims. *Switzer Bros., Inc. v. Byrne,* 242 F.2d 909 (6th Cir.1957); *Procter & Gamble Co. v. Paragon Trade Brands, Inc.,* 917 F.Supp. 305 (D.Del.1995); *Valmet Paper Mach., Inc. v. Beloit Corp.,* 868 F.Supp. 1085 (W.D.Wis. 1994); *Ciba–Geigy Corp. v. Alza Corp.,* 804 F.Supp. 614 (D.N.J.1992); *Hockerson–Halberstadt, Inc. v. Nike, Inc.,* 779 F.Supp. 49, 54 (E.D.La.1991); *Afros S.p.A. v. Krauss–Maffei Corp.,* 671 F.Supp. 1402 (D.Del.1987).

The patent claims addressed in these cases present analogous factual and legal situations to those found in this case. Typically, with some minor variations, a licensee of a patent files suit against a party allegedly infringing on the patent, notwithstanding the statutory requirement that only the patent owner may sue for infringement. *Procter & Gamble,* 917 F.Supp. at 307–08. Subsequent to the filing of the lawsuit, the licensee is assigned both the patent and a right of action for past infringements. *Id.* Although the party suing for damages on infringement, as a licensee, did not initially have a sufficient interest in the patent to support the suit, some courts have held that the subsequent, pre-judgment

acquisition of the patent was effective to perfect the party's standing. *Valmet,* 868 F.Supp. at 1090. According to these courts, precluding subsequent developments from curing time-of-filing defects in standing would "exalt form over substance." *Procter & Gamble,* 917 F.Supp. at 309–10 (quoting *Valmet,* 868 F.Supp. at 1090 (internal quotation marks omitted)); *Ciba–Geigy,* 804 F.Supp. at 636–37. If the action were dismissed, the party whose standing had been perfected, would simply need to re-file the lawsuit. *Id.* at 310. Or, quixotically, "[i]f a subsequent assignee were required to join the previous owner/assignor of the patent as an indispensable party, the court would have to simultaneously dismiss that prior owner/assignor because it would no longer possess any interest in the litigation." *Id.*

Other federal courts, however, relying on competing policy rationales, have embraced the opposite position. Some federal courts have held that a party's standing is strictly determined by the rights the party has at the time the suit was filed. *Procter & Gamble,* 917 F.Supp. at 309. *See Arachnid, Inc. v. Merit Indus., Inc.,* 939 F.2d 1574, 1579 (1991); *Switzer Bros.,* 242 F.2d at 913; *Afros,* 671 F.Supp. at 1445. Under this view, allowing a subsequent act to retroactively cure any defect in standing that existed at the time of pleading would "impermissibly expand the class of persons able to sue for infringement." *Procter & Gamble,* 917 F.Supp. at 309 (quoting *Afros,* 671 F.Supp. at 1446) (internal quotation marks omitted).

> Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignments in order to expand their arsenal and the scope of litigation.

*Id.* at 310.

"As a general matter, parties should possess rights before seeking to have them vindicated in court." *Procter & Gamble Co.,* 917 F.Supp. at 310. Nevertheless, in Hawai'i, "standing requirements should not be barriers to justice.... One whose legitimate interest is in fact injured by illegal action of

an agency or officer should have standing because justice requires that such a party should have a chance to show that the action that hurts his interest is illegal." *Sierra Club v. Dept. of Transp.*, 115 Hawai'i 299, 319, 167 P.3d 292, 312 (2007) (quoting *Mahuiki v. Planning Comm'n*, 65 Haw. 506, 512–13, 654 P.2d 874, 878 (1982)) (internal quotation marks and brackets omitted).

 To hold that the circuit court lacked jurisdiction would be to exalt form over substance, to the extent that IndyMac could immediately re-initiate the same cause of action and follow the path the litigation has taken so far, with the same result. Since IndyMac perfected its interest within a few months of initiating the suit and Appellants did not previously challenge IndyMac's standing on this basis, the post-filing cure to standing does not affect the rights, liabilities, claims or defenses of Appellants in any meaningful way.

Allowing this retroactive cure to standing does not appear to raise the threat of opening the courts to additional litigation, as it does not allow suits by those who cannot show, prior to the entry of judgment, their interest in the litigation.

Lastly, to do otherwise would cause needless expense and delay. As in the present case, where a dispute has already arrived at a final judgment and the issue has been raised for the first time on appeal, dismissing the suit without prejudice does nothing to change the resolution of the underlying dispute other than to compel the parties to refile and relitigate a matter, potentially affording the non-prevailing litigant another bite at the apple and certainly increasing the time and resources necessary to bring the matter to a final conclusion. We therefore conclude that by perfecting its interest in Appellants' Mortgage prior to the order granting summary judgment and entry of the decree of foreclosure in IndyMac's favor, IndyMac effectively cured its lack of standing at the initiation of this lawsuit.

## C. The Mortgage Held By IndyMac Was Valid.

In their third point on appeal, Appellants again challenge IndyMac's standing by challenging the validity of Appellants' Mortgage. Appellants contend that Alliance was acting as Appellants' mortgage broker at the time the Mortgage was originally executed. Appellants rely on the assignment agreement between Alliance and BNY, which bears a date one day prior to the execution of the Mortgage itself to support their position that Alliance was essentially a conduit for BNY, who provided the funds for Appellants' loan. Appellants contend that this is evidence of a so-called "table loan" funded by BNY. Relying on *Beneficial Hawaii, Inc. v. Kida*, 96 Hawai'i 289, 30 P.3d 895 (2001), Appellants conclude that because Alliance did not have a valid mortgage broker's license at the time the mortgage was executed, the Mortgage is not valid.

At the heart of the holding in *Beneficial Hawaii* is the construction and application of HRS § 454–8 (1993), which provides, in part, that "[a]ny contract entered into by any person with any unlicensed mortgage broker or solicitor shall be void and unenforceable." In *Beneficial Hawaii*, the court held that

> the broad language of HRS § 454–8, which expressly invalidates "any contract entered into by any person with any unlicensed mortgage broker," read in *pari materia* with the definition of "mortgage broker" as set forth in HRS § 454–1, compels the conclusion that a note and mortgage designating the broker as the creditor as a result of the broker's brokering activities falls within the proscription of HRS ch. 454. When a statute requiring a license declares void contracts "made" by an unlicensed person, the violation of the statute is a defense to enforcement of the instrument even against a holder in due course.

*Beneficial Hawaii*, 96 Hawai'i at 311–12, 30 P.3d at 917–18. In *Beneficial Hawaii*, the borrower signed a promissory note and mortgage in favor of The Mortgage Warehouse. *Id.* at 297, 30 P.3d at 903. The Mortgage Warehouse was unlicensed and was both the lender and broker in the transaction. *Id.* at 306, 311, 30 P.3d at 912, 917.

 In the instant case, unlike in *Beneficial Hawaii*, the Note and Mortgage were signed in favor of Alliance, as the lender, by

Appellants. It appears from the record that Appellants' broker was Citizens Mortgage and Appellants do not claim Citizens Mortgage was unlicensed. As *Beneficial Hawaii* makes clear, HRS Chapter 454 "was not intended to regulate mortgage transactions on the secondary market." *Beneficial Hawaii*, 96 Hawai'i at 308–09, 30 P.3d at 914–15. As such, that Alliance was not licensed in Hawai'i at the time the Mortgage was executed has no bearing on this suit; *Beneficial Hawaii* and HRS § 454–8 do not apply to this case. Therefore, Appellants' contention that IndyMac lacked standing because the Mortgage was unenforceable as a consequence of Alliance being an unlicensed mortgage broker has no merit.

## II. Appellants' TILA Claim Was Barred by Collateral Estoppel.

■ Appellants appear to argue that an April 1, 2004 amendment to Regulation Z by the Board of Governors of the Federal Reserve System (Federal Reserve Board) was binding on the circuit court in addressing Appellants' defense based on an alleged TILA violation by Alliance. Appellants, relying on *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980), contend that Federal Reserve Board decisions are retroactively applicable to pending litigation, and as such should be applied to this litigation.

While some support exists for Appellants' contention that Federal Reserve Board amendments and modifications are retroactively applicable, the extent of the retroactive effect is not without qualification, and has only been applied to ongoing disputes. *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 943 (7th cir.1995) ("objection based on retroactivity falls away when the commentary is deemed interpretive rather than legislative, and the commentary in question purported to clarify rather than to change existing law"); *Pettola v. Nissan Motor Acceptance Corp.*, 44 F.Supp.2d 442, 447 (D.Conn.1999) ("Given the interpretive nature of the Board's commentary and the Second Circuit's counsel that the Board's regulations as well as the Staff Commentary are to be considered dispositive unless 'de-monstrably irrational,' we hold that the Staff Commentary should be applied retroactively."). Appellants provide no support for the proposition that Federal Reserve Board rules retroactively apply to TILA disputes in which a final, unappealable judgment was rendered. We are unwilling to extend the retroactive effect of Federal Reserve Board commentary so far.

■ Collateral estoppel, or issue preclusion, applies where the party asserting the defense establishes that:

(1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom [issue preclusion] is asserted was a party or in privity with a party to the prior adjudication.

*Bremer v. Weeks*, 104 Hawai'i 43, 54, 85 P.3d 150, 161 (2004) (quoting *Dorrance v. Lee*, 90 Hawai'i 143, 149, 976 P.2d 904, 910 (1999)).

In the federal TILA dispute between Appellants and IndyMac's predecessor-in-interest BNY, Appellants sought to rescind the Mortgage. Though the federal district court ruled in favor of Appellants, the federal litigation was finally resolved by the Ninth Circuit, which ordered the lawsuit dismissed with prejudice. *Miguel*, 309 F.3d at 1165–66. The Ninth Circuit explained that Appellants had failed to properly give timely notice of their intent to rescind the Mortgage to Alliance and consequently, that their right to rescind had lapsed. *Id.* at 1165. While Appellants are not entirely clear, it appears that they are arguing that the circuit court should have found the Note and Mortgage void based on the same alleged TILA rescission remedy that the Ninth Circuit ruled was no longer available to them.

The decision of the Ninth Circuit finally resolved Appellants' TILA claim in favor of IndyMac's predecessor in interest and could not be relitigated by the circuit court based on a subsequent decision by the Federal Reserve Board.

### III. IndyMac's Motion for Summary Judgment Was Properly Granted by the Circuit Court

Appellants contend that at the time the circuit court considered IndyMac's motion for summary judgment on the foreclosure action, genuine issues of material fact were in dispute. Specifically, Appellants argue that summary judgment is only appropriate in a foreclosure action where the moving party establishes, with admissible evidence, the existence of a default in the mortgage agreement. Appellants reason that because IndyMac failed to put an accurate loan general ledger into evidence, the existence of a default, and notice thereof, have not been established. As such, Appellants argue, the circuit court erred in granting the motion for summary judgment on the foreclosure action and in entering any judgment to confirm based on that summary judgment. At no point do Appellants challenge any of the circuit court's findings of fact made in support of its ruling to grant IndyMac's motion for summary judgment.

### A. Summary Judgment in the Foreclosure Action Was Properly Granted by the Circuit Court

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *Querubin,* 107 Hawai'i at 56, 109 P.3d at 697 (quoting *Hawai'i Cmty. Fed. Credit Union v. Keka,* 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000)).

In filing a motion for summary judgment, the movant carries the initial burden of establishing the material facts by way of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any[.]" Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c); *GECC Fin. Corp. v. Jaffarian,* 79 Hawai'i 516, 521,

904 P.2d 530, 535 (App.1995). Once the moving party has satisfied the initial burden of production, "the burden shift[s] to the nonmoving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." *GECC Fin. Corp.,* 79 Hawai'i at 521, 904 P.2d at 535; *see also* HRCP Rule 56(e). The opposing party cannot meet this burden by merely "alleging conclusions, nor is [the party] entitled to a trial on the basis of a hope that [the party will be able to] produce some evidence at that time." *Henderson v. Prof'l Coatings Corp.,* 72 Haw. 387, 401, 819 P.2d 84, 92 (1991) (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 2727 (1983)) (internal quotation marks omitted).

Nevertheless, "[s]ummary judgment is a drastic remedy which must be cautiously invoked in order '[t]o avoid improperly depriving a party to a lawsuit of the right to a trial on disputed factual issues[.]' " *Ocwen Fed. Bank, FSB v. Russell,* 99 Hawai'i 173, 182, 53 P.3d 312, 321 (App.2002) (quoting *GECC Fin. Corp.,* 79 Hawai'i at 521, 904 P.2d at 535). As such, safeguards exist to prevent it from becoming "a substitute for existing methods of determining factual issues." *Miller v. Manuel,* 9 Haw.App. 56, 66, 828 P.2d 286, 292 (1991).

To begin with, "the moving party bears the ultimate burden of persuasion." *GECC Fin. Corp.,* 79 Hawai'i at 521, 904 P.2d at 535. It is the moving party's responsibility "to convince the court that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law." *Id.* Moreover, "the burden of proof is a stringent one," in considering the evidence presented in the motion, deference is given to the non-moving party; all of the evidence and the inferences drawn therefrom, "must be viewed in the light most favorable to the non-moving party[.]" *GECC Fin. Corp.,* 79 Hawai'i at 521, 904 P.2d at 535. Finally, "any doubt concerning the propriety of granting the motion should be resolved in favor of the non-moving party." *Id.*

In No. 26881, Appellants challenge the foreclosure decree entered against them. As provided in HRS § 667–1 (1993), where a mortgagor defaults in payment of a debt secured by a mortgage, "[t]he circuit court may assess the amount due upon [the] mortgage, whether of real or personal property, without the intervention of a jury, and shall render judgment for the amount awarded, and the foreclosure of the mortgage." The Hawai'i Supreme Court has explained that "foreclosure cases are bifurcated into two separately appealable parts: (1) the decree of foreclosure and the order of sale, if the order of sale is incorporated within the decree; and (2) all other orders." *Beneficial Hawaii, Inc. v. Casey,* 98 Hawai'i 159, 165, 45 P.3d 359, 365 (2002) (*Casey* ) (quoting *Security Pac. Mortgage Corp. v. Miller,* 71 Haw. 65, 70, 783 P.2d 855, 857 (1989)) (internal quotation marks omitted). Appeals of foreclosure decrees and their accompanying orders are allowed, even though additional proceedings remain in the circuit court, because of their idiosyncratic nature:

> a foreclosure decree falls within that small class of orders "which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

*Casey,* 98 Hawai'i at 165, 45 P.3d at 365 (quoting *Int'l Sav. and Loan Ass'n, Ltd. v. Woods,* 69 Haw. 11, 15, 731 P.2d 151, 154 (1987)).

A foreclosure decree is only appropriate where all four material facts have been established: "(1) the existence of the Agreement, (2) the terms of the Agreement, (3) default by [Appellants] under the terms of the Agreement, and (4) the giving of the cancellation notice and recordation of an affidavit to such effect." *Bank of Honolulu, N.A. v. Anderson,* 3 Haw.App. 545, 551, 654 P.2d 1370, 1375 (1982). Thus, while it is necessary to provide evidence of a default, as explained in *Bank of Honolulu,* it is not necessary to determine "a sum certain before foreclosure is decreed[.]" *Id.* at 549, 654 P.2d at 1374. This is especially true where

the foreclosure decree "contains a direction to [the] commissioner[ ] to make a report of sale and to bring the proceeds into court for an order regarding their disposition." *Int'l Sav. & Loan Ass'n, Ltd.,* 69 Haw. at 17, 731 P.2d at 155 (quoting *MDG Supply, Inc. v. Diversified Inv., Inc.,* 51 Haw. 375, 380, 463 P.2d 525, 528 (1969)) (internal quotation marks omitted).

The material inquiry relevant to a foreclosure decree is whether a default occurred, not the amount owed. Appellants' contention that the loan ledger was inaccurate focuses on the period prior to January 1997 for which the ledger has no entries. However, despite this omitted period, the loan ledger provides clear evidence of omitted payments beginning in November 1997, for which it has entries. Appellants have never challenged the loan general ledger's demonstration of a default. As such, Appellants have failed to meet their burden of establishing a genuine issue of material fact.

## B. The court properly entered judgment confirming the sale

In No. 27406, Appellants challenge the summary judgment on the deficiency and rely on almost a verbatim repetition of the argument they used to challenge the foreclosure decree in No. 26881. Appellants again contest the circuit court's ruling on the motion for summary judgment underlying the decree of foreclosure. However, in this incarnation of the argument, Appellants contend that the invalidity of the underlying foreclosure decree invalidates all subsequent judgments. Appellants do not raise any arguments directly contesting the amount due under the deficiency judgment.

In the framework of the foreclosure case proceeding, the deficiency judgment at issue in this appeal falls under a second, separately appealable part of bifurcated proceedings, the first, discussed above, being the foreclosure decree. *Casey,* 98 Hawai'i at 165, 45 P.3d at 365. As explained by the Hawai'i Supreme Court, challenges to the existence of liability under a foreclosure decree with a right to a deficiency judgment may only be raised when appealing the foreclosure de-

cree. *Id.* Only the extent of liability—the amount due in deficiency—may be challenged when appealing the subsequent deficiency judgment. *Id.; see Security Pac. Mortgage Corp.*, 71 Haw. at 70–71, 783 P.2d at 857–58.

■ Because the foreclosure decree included an unchallenged right to a deficiency judgment, in appealing the deficiency judgment Appellants were limited to those arguments germane to the amount of the deficiency judgment, and not to the right to the deficiency judgment. However, Appellants have failed to provide any cognizable argument supporting a challenge to the amount of the deficiency judgment. As explained by the Hawai‘i Supreme Court, where an appellant fails to make a "discernible argument in support of [a] position," this court may disregard the contention. *Taomae v. Lingle*, 108 Hawai‘i 245, 257, 118 P.3d 1188, 1200 (2005) (quoting *Norton v. Admin. Dir. of the Court*, 80 Hawai‘i 197, 200, 908 P.2d 545, 548 (1995)) (internal quotation marks omitted); *see* Hawai‘i Rules of Appellate Procedure Rule 28(b)(7) ("Points not argued may be deemed waived.").

### IV. The Expungements of the Notice of Pendency of Actions are Moot

In appeal No. 27561, Appellants make what they style as two arguments concerning the circuit court's expunging the lis pendens. First, Appellants contend that both of their notices of pendency of actions were valid given that the pending appeals sought to recover possession of the property. Second, Appellants argue that the Hawai‘i Supreme Court's ruling in *TSA Int'l Ltd. v. Shimizu Corp.*, 92 Hawai‘i 243, 990 P.2d 713 (1999) does not render the notices of pendency of action invalid because the pending appeals were based in part on challenges to the jurisdiction of the circuit court.

■ The doctrine of lis pendens is intended to protect a claimed interest in property from being defeated by a subsequent sale to a bona fide purchaser during the course of litigation. *TSA*, 92 Hawai‘i at 266, 990 P.2d at 736. Hawai‘i's codification of the doctrine of lis pendens provides, in relevant part:

In any action concerning real property or affecting the title or the right of possession of real property, the plaintiff, at the time of filing the complaint, and any other party at the time of filing a pleading in which affirmative relief is claimed, or at any time afterwards, may record in the bureau of conveyances a notice of the pendency of the action, containing the names or designations of the parties, as set out in the summons or pleading, the object of the action or claim for affirmative relief, and a description of the property affected thereby. From and after the time of recording the notice, a person who becomes a purchaser or incumbrancer of the property affected shall be deemed to have constructive notice of the pendency of the action and be bound by any judgment entered therein if the person claims through a party to the action; provided that in the case of registered land, section 501–151 and sections 501–241 to 501–248 shall govern.

HRS § 634–51 (Supp.2007). As explained in *TSA*, "[b]ased upon this language, a *lis pendens* may only be filed in connection with an action (1) concerning real property, (2) affecting title to real property, or (3) affecting ... the right of possession of real property." 92 Hawai‘i at 266, 990 P.2d at 736 (quoting *S. Utsunomiya Enters., Inc.*, 75 Haw. at 505, 866 P.2d at 964) (internal quotations omitted).

■ In the instant case, Appellants filed both of their motions for notice of pendency of action after the decree of foreclosure, after the order confirming the foreclosure sale was entered, and after the writ of possession had been issued by the court in favor of IndyMac. As explained by the Hawai‘i Supreme Court, the sale of the property to a third party renders the appeal of the expungement of a lis pendens moot. *Lathrop v. Sakatani*, 111 Hawai‘i 307, 313, 141 P.3d 480, 486 (2006). Mootness arises in this situation because, "[e]ven assuming, but not agreeing, that the circuit court erred in granting the defendant[']s motion to expunge, the plaintiffs would not be able to record another *lis pendens* upon the [ ] property inasmuch as the property has been sold

and the [defendants] do not hold title to it." *Id.*, at 313, 141 P.3d at 486. As such "the sale of the property prevents the appellate court from granting any effective relief." *Id.*[6]

In light of the holding in *Lathrop*, and the sale of the property at issue in this case to a third party, the appeal of the expungement of the notices of pendency of action is moot.

## CONCLUSION

Appellants' arguments concerning Indy-Mac's standing, the jurisdiction of the court, and the circuit court's resolution of the motions for summary judgment are unpersuasive. The Circuit Court of the First Circuit's September 9, 2004 Judgment on Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Second Motion for Summary Judgment and Decree of Foreclosure Against All Defendants on Complaint Filed April 4, 2003 in appeal No. 26881, the June 30, 2005 Judgment on Order Granting Plaintiff's Motion for Order Confirming Foreclosure Sale, Allowance of Costs, Commissions and Fees, Directing Conveyance and For Judgment For Deficiency, Filed May 9, 2005 in appeal No. 27406, and the Order Granting IndyMac Bank, F.S.G.'s Motion to Expunge Notices of Pendency of Action entered September 20, 2005 in appeal No. 27561 are affirmed.

---

**6.** As pointed out by the Hawai'i Supreme Court "it is appellant's burden to seek a stay if post-appeal transactions could render the appeal moot." *Lathrop v. Sakatani*, 111 Hawai'i 307, 313, 141 P.3d 480, 486 (2006) (quoting *In re* *Gotcha Int'l L.P.*, 311 B.R. 250, 255 (9th Cir.BAP 2004)) (internal quotation marks omitted). There is no indication from the parties' briefs or the record that Appellants ever filed for a stay.