**FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000488
19-JUN-2026
07:50 AM
Dkt. 66 OP

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,
SUCCESSOR INDENTURE TRUSTEE TO JPMORGAN CHASE BANK,
N.A. AS INDENTURE TRUSTEE ON BEHALF OF THE NOTEHOLDERS
OF THE CWHEQ INC., CWHEQ REVOLVING HOME EQUITY LOAN TRUST,
SERIES 2005-K, Plaintiff-Appellee,
v.
JEFFREY ALAN WHITTINGTON, DARYL JEAN KATSUKO WHITTINGTON,
Defendants-Appellants
and
THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK
AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC.,
CHL MORTGAGE PASS-THROUGH TRUST 2005-24, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2005-24; QUEEN'S GATE COMMUNITY ASSOCIATION,
QUEEN'S POINT COMMUNITY ASSOCIATION, Defendants-Appellees
and
JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10,
DOE CORPORATIONS 1-10, DOE ENTITIES 1-10 AND DOE GOVERNMENTAL
UNITS 1-10, Defendants.

NO. CAAP-24-0000488

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CCV-23-0000252)

JUNE 19, 2026

NAKASONE, CHIEF JUDGE, AND WADSWORTH AND GUIDRY, JJ.

OPINION OF THE COURT BY WADSWORTH, J.

This appeal stems from a foreclosure action on a second mortgage securing a home equity line of credit agreement (**HELOC**). The Circuit Court of the First Circuit[1] (**Circuit Court**) entered summary judgment and a foreclosure decree in favor of Plaintiff-Appellee The Bank of New York Mellon fka the Bank of New York, Successor Indenture Trustee to JPMorgan Chase Bank, N.A., as Indenture Trustee on Behalf of the Noteholders of The CWHEQ Inc., CWHEQ Revolving Home Equity Loan Trust, Series 2005-K (**BONYM**) against self-represented Defendants-Appellants Daryl Jean Katsuko Whittington (**Daryl**) and Jeffrey Alan Whittington (**Jeffrey**) (together, the **Whittingtons**) and other defendants.

The Whittingtons appeal from the Circuit Court's: (1) June 26, 2024 *Judgment on Findings of Fact, Conclusions of Law and Order Granting [BONYM]'s Motion for Default Judgment and Summary Judgment and Decree of Foreclosure Against All Defendants on Complaint Filed February 27, 2023* (**Judgment**); and (2) August 23, 2024 *Order Denying [the Whittingtons'] Notice and Motion for New Trial, Filed April 1, 2024*. See Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 4(a)(3). The Whittingtons also challenge the Circuit Court's June 26, 2024 *Findings of Fact, Conclusions of Law and Order Granting [BONYM]'s Motion for Default Judgment and Summary Judgment and Decree of Foreclosure Against All Defendants on Complaint Filed February 27, 2023* (**Foreclosure Decree**).[2]

---

[1]    The Honorable James H. Ashford presided.

[2]    Daryl's opening brief states that Jeffrey died on September 5, 2024, after the notice of appeal was filed. Although she purports to submit the brief for herself and Jeffrey, she cannot speak for Jeffrey or his estate absent compliance with HRAP Rule 43(a), which provides for substitution of a party who dies pending appeal.

On May 21, 2026, this court issued an Order providing, among other things, that within ten days, "any party or a personal representative of Jeffrey may file a statement advising this court whether a personal representative has been appointed and, if so, whether that person wishes to substitute into this case[,]" pursuant to HRAP Rule 43(a). The Order also required the parties to file a statement as to whether the appeal is moot as to Jeffrey. BONYM filed a statement indicating that if any substitution should be made, Daryl should be substituted for Jeffrey, but that the appeal is moot as to Jeffrey. Daryl did not respond to the Order. Because we conclude that the appeal is moot as to Jeffrey (see infra), we further conclude that no substitution is necessary.

On appeal, Daryl contends that the Circuit Court erred in granting BONYM's January 29, 2024 motion for default and summary judgment (**MSJ**) because: (1) the subject HELOC was not a negotiable instrument as defined by Hawaii Revised Statutes (**HRS**) § 490:3-104 and therefore not transferable by endorsement;[3/] and (2) "the [Circuit] Court agreed that it was in dispute that . . . the Note was properly endorsed[.]"[4/]

We hold that the HELOC was not a negotiable instrument under HRS § 490:3-104 because it did not contain an unconditional promise to pay "a fixed amount of money." HRS § 490:3-104(a). Because the HELOC was not a negotiable instrument, BONYM could

---

[3/] During the relevant time period, HRS § 490:3-104 (2008) stated, in pertinent part:

> **Negotiable instrument.** (a) Except as provided in subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> > (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
> >
> > (2) Is payable on demand or at a definite time; and
> >
> > (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain:
> >
> > > (A) An undertaking or power to give, maintain, or protect collateral to secure payment;
> > >
> > > (B) An authorization or power to the holder to confess judgment or realize on or dispose of collateral;
> > >
> > > (C) A waiver of the benefit of any law intended for the advantage or protection of an obligor.
>
> (b) "Instrument" means a negotiable instrument.

[4/] Daryl's first point of error has been restated for clarity. The opening brief fails to comply in certain respects with HRAP Rule 28(b). In particular, Daryl fails to provide a statement of "where in the record the alleged error[s were] objected to or the manner in which the alleged error[s were] brought to the attention of the court," as required by HRAP Rule 28(b)(4)(iii). In addition, Daryl's argument is cursory and somewhat difficult to discern. HRAP Rule 28(b)(7). Nevertheless, Hawaiʻi appellate courts have "consistently adhered to the policy of affording litigants the opportunity 'to have their cases heard on the merits, where possible.'" Marvin v. Pflueger, 127 Hawaiʻi 490, 496, 280 P.3d 88, 94 (2012) (quoting Morgan v. Plan. Dep't, Cnty. of Kauai, 104 Hawaiʻi 173, 180-81, 86 P.3d 982, 989-90 (2004)). We thus address Daryl's arguments to the extent discernible.

not enforce it under HRS § 490:3-301[5/] as a "holder," based on possession of the HELOC, endorsed in blank. Enforcement rights in a nonnegotiable instrument such as the HELOC *may* be transferred by written assignment. This means that the mere possession of the instrument endorsed in blank does not *necessarily* indicate that the possessor has authority to enforce it. Accordingly, BONYM did not establish its standing to enforce the HELOC merely by showing it possessed the HELOC, endorsed in blank, at the time it filed the foreclosure complaint. Summary judgment was granted in error.

We therefore vacate the Judgment.

## I.  Background

Based on the parties' respective summary judgment submissions, the following facts appear to be uncontroverted.

Daryl executed the HELOC dated September 30, 2005, and delivered it to First Magnus Financial Corporation (**FMFC**). The HELOC provided a line of credit that allowed Daryl to make draws or "loans" of varying amounts up to a $200,000 credit limit, and obligated Daryl to pay to FMFC's order whatever she borrowed, plus interest. The HELOC further provided: "[FMFC] may transfer and assign [its] rights and obligations under this Agreement and the Mortgage at any time without [Daryl's] consent."

The HELOC was secured by a second mortgage (**Mortgage**) dated September 30, 2005, and recorded in the Bureau of Conveyances on October 6, 2005, on certain real property in Honolulu owned by the Whittingtons (**Property**). The Mortgage was

---

[5/]     During the relevant time period, HRS § 490:3-301 (2008) stated, in pertinent part:

> **Person entitled to enforce instrument.**  "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 490:3-309 or 490:3-418(d).

As relevant here, under HRS § 490:1-201(b) (2008), "'[h]older' means . . . [t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]"  (Formatting altered.)

executed by Daryl and Jeffrey and given to Mortgage Electronic Registration Systems, Inc. (**MERS**), as nominee for FMFC, and FMFC's "successors and assigns[.]"

At some later time, FMFC endorsed the HELOC by means of an endorsement stamp "pay to the order of" Countrywide Bank, N.A., which then endorsed the HELOC by means of an endorsement stamp "pay to the order of" Countrywide Home Loans Inc. (**CHLI**). CHLI then endorsed the HELOC by means of an endorsement stamp "in blank."

The Mortgage was assigned twice via a written assignment. First, by an Assignment of Mortgage dated August 28, 2013 (**2013 Assignment**), MERS as nominee for FMFC assigned "all its right, title, and interest in and to" the Mortgage to The Bank of New York Mellon FKA The Bank of New York, as Successor Trustee to JPMorgan Chase Bank, N.A., as Trustee on behalf of the Certificateholders of the CWHEQ Inc., CWHEQ Revolving Home Equity Loan Trust, Series 2005-K (**2013 Assignee**). The 2013 Assignment was recorded in the Bureau of Conveyances on September 30, 2013. Second, by an Assignment of Mortgage dated June 27, 2022 (**2022 Assignment**), the 2013 Assignee assigned the Mortgage "with all the right, title and interest of the [2013 Assignee] in and to the [P]roperty" to BONYM. The 2022 Assignment was recorded in the Bureau of Conveyances on December 14, 2022.

Meanwhile, the Whittingtons conveyed the Property to Daryl as tenant in severalty by a Quitclaim Deed dated August 27, 2008, and recorded in the Bureau of Conveyances on the same date.

After Daryl defaulted on the HELOC and written notice was given, on February 27, 2023, BONYM filed a foreclosure complaint (**Complaint**) against Daryl, Jeffrey and others who may have had an interest in the Property.

On January 29, 2024, BONYM filed the MSJ. BONYM argued that it had standing to enforce the HELOC under HRS § 490:3-301 because it was the holder of the HELOC, which was endorsed in blank, and was in possession of the HELOC when the Complaint was filed.

On February 22, 2024, the Whittingtons filed their opposition to the MSJ. They argued in part that the HELOC was

not a negotiable instrument as defined by HRS § 490:3-104, the HELOC "could not be legally endorsed in blank or to BONYM[,]" and therefore BONYM had not established its standing to enforce the HELOC.

Following a March 6, 2024 hearing, the Circuit Court granted the MSJ. The court reasoned in part:

> While Defendants are correct that the HELOC is not a negotiable instrument as defined by [HRS] § 490:3-104, the Court disagrees with Defendants' contention that Plaintiffs are without standing to foreclose. The Court is unaware of any Hawaiʻi case law concluding that a non-negotiable instrument cannot *also* be transferred by means of an in blank or special endorsement as was done here. The Court finds as a matter of law that a lender has standing, and is entitled to foreclose, if the HELOC (1) has a special or in blank endorsement, (2) was delivered, and (3) the lender has possession.

On this basis, the court found there was no genuine issue of material fact as to BONYM's standing to foreclose. The court subsequently entered the Foreclosure Decree and the Judgment.

## II. Discussion

### A. Mootness as to Jeffrey

We first address BONYM's contention that this appeal is moot as to Jeffrey. BONYM argues that this is so because: (1) "[f]oreclosure is an 'in rem' proceeding, and Jeffrey was not a signator to the [HELOC]"; (2) "[t]he Foreclosure [Decree] . . . confirms the conveyance of the mortgaged property to Daryl, as tenant in severalty"; and (3) "Jeffrey was dismissed from the foreclosure proceeding effective May 9, 2025, pursuant to [the Circuit Court's order at] Dkt. 170."[6]

"A case is moot if it has lost its character as a present, live controversy of the kind that must exist if courts are to avoid advisory opinions on abstract propositions of law." Civil Beat Law Ctr. for the Pub. Interest, Inc. v. City & Cnty. of Honolulu, 144 Hawaiʻi 466, 476, 445 P.3d 47, 57 (2019)

---

[6] BONYM is referring to the Circuit Court's May 9, 2025 *Order Granting [BONYM's] Motion for Partial Dismissal Without Prejudice of [BONYM's] Complaint Filed February 27, 2023 and Vacate Findings of Fact, Conclusions of Law and Order Granting [BONYM's] Motion for Default Judgment and Summary Judgment and Decree of Foreclosure Against All Defendants on Complaint Filed February 27, 2023, Filed June 26, 2024, as to . . . Jeffrey . . .* (**Partial Dismissal Order**).

(quoting Kahoʻohanohano v. State, 114 Hawaiʻi 302, 332, 162 P.3d 696, 726 (2007)).  In other words, "a case is moot if the reviewing court can no longer grant effective relief." Kahoʻohanohano, 114 Hawaiʻi at 332, 162 P.3d at 726 (emphasis and brackets omitted) (quoting Kemp v. State of Hawaiʻi Child Support Enf't Agency, 111 Hawaiʻi 367, 385, 141 P.3d 1014, 1032 (2006)).

        We take judicial notice of the Partial Dismissal Order, which vacated the Foreclosure Decree and dismissed the Complaint as to Jeffrey.  It appears, therefore, that the Judgment as to Jeffrey, which was based on the Complaint and the Foreclosure Decree, has been rendered void as to Jeffrey, and we construe BONYM's mootness argument to acknowledge as much.  In this situation, we can no longer grant effective relief to Jeffrey (or his estate), and we thus conclude that the appeal is moot as to him.

**B.  Summary Judgment As Against Daryl**

        We review the grant of summary judgment de novo.  U.S. Bank, N.A. v. Mattos, 140 Hawaiʻi 26, 30, 398 P.3d 615, 619 (2017).  A foreclosing plaintiff must establish its standing to enforce the underlying debt obligation when the complaint was filed.  See Bank of America, N.A. v. Reyes-Toledo, 139 Hawaiʻi 361, 368, 390 P.3d 1248, 1255 (2017) (to establish standing, "a foreclosing plaintiff must necessarily prove its entitlement to enforce the note as it is the default on the note that gives rise to the action.").  Where the debt obligation is a negotiable instrument, a person entitled to enforce it includes the "holder," defined in relevant part as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]"  HRS §§ 490:1-201(b), :3-301.  To be "negotiable," an instrument must, among other things, contain "an unconditional promise or order to pay a fixed amount of money, with or without interest . . . [.]" § 490:3-104 (emphasis added).

        Here, on its face, the HELOC does not contain an unconditional promise to pay a fixed amount of money.  Rather, it provides a line of credit that allowed Daryl to make draws or

"loans" of varying amounts up to the credit limit, and obligated Daryl to pay whatever she borrowed, plus interest. The HELOC therefore did not meet the definition of a negotiable instrument under HRS § 490:3-104, such that the right to enforce it could pass through possession.[7] BONYM was not a "holder" of the HELOC when it filed the Complaint.

The Circuit Court similarly concluded that the HELOC was not a negotiable instrument as defined by HRS § 490:3-104. Nevertheless, the court "disagree[d] with [the Whittingtons'] contention that [BONYM is] without standing to foreclose[,]" because the court was "unaware of any Hawaiʻi case law concluding that a non-negotiable instrument cannot *also* be transferred by means of an in blank or special endorsement as was done here." The court concluded that BONYM had established its standing as a matter of law. On appeal, BONYM echoes this conclusion.[8]

The problem with this reasoning is that it provides no legal basis for BONYM to enforce the HELOC against Daryl, as it cannot enforce the agreement under HRS § 490:3-301 as a "holder," based on possession of a nonnegotiable instrument endorsed in blank. And Hawaiʻi case law does not resolve the enforcement issue in these circumstances. In other jurisdictions, the majority common law view is that it is *possible* to transfer the right to enforce a nonnegotiable note by endorsement and delivery. See Marquez Vargas, 589 P.3d at 301 (citing Dale A. Whitman, Transferring Nonnegotiable Mortgage Notes, 11 Fla. A&M

---

[7] "The majority of jurisdictions to consider the issue have come to the same conclusion: credit line agreements, including HELOC agreements, are not negotiable instruments because they do not contain an unconditional promise to pay a fixed amount of money and instead require reference to separate documents to determine the principal amount borrowed." Marquez Vargas v. RRA CP Opportunity Trust 1, 589 P.3d 281, 292 & n.10 (Wash. Apr. 30, 2026) (collecting cases).

[8] BONYM also argues that the HELOC became payable in a fixed amount in June 2020, after the draw period ended, Daryl ceased making payments, and the holder's servicer declared all sums owing due and payable. Even if the latter event could have transformed the HELOC into a negotiable instrument, BONYM has not pointed to any evidence in the record showing that the event occurred prior to endorsement and delivery of the HELOC. See Marquez Vargas, 589 P.3d at 294 ("The fact that an agreement provides that the principal will become fixed at a future date fails to satisfy the 'fixed amount of money' requirement.").

U. L. Rev. 63, 97-98 & nn.143-44 (2015) (collecting cases)).[9] But the majority view also permits transfer of enforcement rights in a nonnegotiable note by <u>written assignment</u> without delivery. <u>See</u> <u>id.</u> (discussing majority view); Whitman, <u>supra</u>, at 97-98 & n.146 (stating that "a substantial majority" of jurisdictions "recognize the validity of a transfer [of enforcement rights] by a separate document of assignment, *without* indorsement or delivery of the note itself") (collecting cases). This view is consistent with Hawaiʻi law, and we are inclined to follow it. <u>See</u> <u>Fireman's Fund Ins. Co. v. AIG Hawaiʻi Ins. Co.</u>, 109 Hawaiʻi 343, 349, 126 P.3d 386, 392 (2006) ("[A]n assignment operates to place the assignee in the shoes of the assignor, and provides the assignee with *the same legal rights as the assignor* had before assignment."); <u>Wohlschlegel v. Uhlmann-Kihei, Inc.</u>, 4 Haw. App. 123, 135, 662 P.2d 505, 514 (1983) (beneficial rights under an executory contract are generally assignable); <u>cf.</u> <u>IndyMac Bank v. Miguel</u>, 117 Hawaiʻi 506, 513, 184 P.3d 821, 828 (App. 2008) (ruling that a promissory note and mortgage were validly assigned by the original mortgagee to an assignee). That a nonnegotiable instrument may be transferred by written assignment means that mere possession of the instrument endorsed in blank does not *necessarily* indicate that the possessor has authority to enforce it.

Indeed, BONYM points out that the HELOC is assignable by its terms.[10] However, BONYM has not shown a right to enforce the HELOC through any written assignment. The assignment of the Mortgage to BONYM, for example, assigns "the mortgage hereinafter described, with all the right, title, and interest of the Assignor in and to the property described in that certain mortgage . . . ." On its face, the assignment does not refer to the HELOC or otherwise reflect an intent to transfer the HELOC to BONYM.

---

[9] The <u>Marquez-Vargas</u> opinion "uses the term 'instrument' interchangeably with the term 'note' or 'mortgage note,' modifying the term with 'negotiable' or 'nonnegotiable' as appropriate." 589 P.3d at 286 n.2.

[10] As noted above, the HELOC provides that "[FMFC] may transfer and assign [its] rights and obligations under this Agreement and the Mortgage at any time without [Daryl's] consent."

Accordingly, we conclude that BONYM could not establish its standing merely by showing that it possessed the HELOC, endorsed in blank, at the time the Complaint was filed. On this record, BONYM did not establish its standing to enforce the HELOC and foreclose as a matter of law. The Circuit Court therefore erred in granting the MSJ. See OneWest Bank, NA v. FMCDH Realty, Inc., 165 A.D.3d 128, 135, 83 N.Y.S.3d 612 (N.Y. App. Div. 2018) (for purposes of summary judgment, the plaintiff's possession of a nonnegotiable note endorsed in blank was not sufficient to establish that plaintiff had the right to enforce).

Given our disposition, we need not address Daryl's remaining contention.

### III.  Conclusion

For the reasons discussed above, the Foreclosure Decree and the Judgment are vacated as to Daryl, and the appeal is dismissed as moot as to Jeffrey. The case is remanded to the Circuit Court for further proceedings consistent with this opinion.

On the briefs:                          /s/ Karen T. Nakasone
                                        Chief Judge
Daryl J.K. Whittington,
Self-represented Defendant-
Appellant                               /s/ Clyde J. Wadsworth
                                        Associate Judge
Zachary K. Kondo and
Mary Martin
(Clay Iwamura Pulice & Nervell)         /s/ Kimberly T. Guidry
for Plaintiff-Appellee                  Associate Judge

10